# PENNSYLVANIA RAILROAD COMPANY *v.* KITTANNING IRON & STEEL MANUFACTURING COMPANY.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 301.   Argued March 26, 1920.—Decided June 1, 1920.

The policy of the "Uniform Demurrage Code" is to treat the car as the unit and fix a standard of diligence in releasing cars independent of the circumstances of the particular consignee. P. 324.

The "Uniform Demurrage Code" fixes 48 hours as the "Free Time"

during which a car may be held for unloading without demurrage charge, but provides, (1) the "Bunching Rule," designed to relieve from charges due to the carrier's act in delivering cars in numbers exceeding the daily rate of shipment, and, (2) the "Average Agreement Rule," under which the "Bunching Rule" is inapplicable but charges for detaining cars more than 48 hours are reduced by credit given for other cars released within 24 hours, during the calendar month; and it further provides that demurrage shall not be collected "When shipments are frozen while in transit so as to prevent unloading during the prescribed free time," provided the consignees "make diligent effort to unload such shipments." *Held*, that a consignee, party to the Average Agreement plan, which was prevented from unloading a number of carloads of frozen ore during the free time, due to their accumulation and delivery by the carrier in numbers exceeding its facilities for thawing and unloading, was not relieved from demurrage by the clause governing frozen shipments. `P. 323.

263 Pa. St. 205, reversed.

THE case is stated in the opinion.

*Mr. Henry Wolf Biklé* and *Mr. Frederic D. McKenney* for petitioner.

*Mr. R. L. Ralston*, with whom *Mr. H. V. Blaxter* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The Uniform Demurrage Code discussed in *Swift & Co.* v. *Hocking Valley Ry. Co.*, 243 U. S. 281, 283, was duly published as a part of the freight tariffs of the Pennsylvania Railroad prior to November 1, 1912. From time to time during the months of December, 1912, and February and March, 1913, the Kittanning Iron and Steel Manufacturing Company received from the railroad an aggregate of 227 cars of iron ore, all interstate shipments; and on account of them the railroad claimed $1,209 for demurrage.

The company refused to pay these, among other, demurrage charges, whereupon this action was brought in a state court of Pennsylvania to recover the amount. The trial court disallowed the claim. The judgment there entered was affirmed by the Supreme Court of the State; and a petition by the Railroad for a writ of certiorari was granted, 249 U. S. 595.

Before receipt of any of the cars the Kittanning Company had entered into an average agreement with the railroad as provided in Rule 9.[1] The aggregate number of days detention of these cars after they reached the company's interchange tracks (in excess of the free time under the average agreement), was 1209; and the demurrage

---

[1] Rule 9. Average Agreement: When a shipper or receiver enters into the following agreement, the charge for detention to cars, provided for by Rule 7, on all cars held for loading or unloading by such shipper or receiver shall be computed on the basis of the average time of detention to all such cars released during each calendar month, such average detention to be computed as follows:

SECTION A. A credit of one day will be allowed for each car released within the first twenty-four hours of free time. A debit of one day will be charged for each twenty-four hours or fraction thereof that a car is detained beyond the first forty-eight hours of free time. In no case shall more than one day's credit be allowed on any one car, and in no case shall more than five (5) days' credit be applied in cancellation of debits accruing on any car, making a maximum of seven (7) days that any car may be held free; this to include Sundays and holidays.

SECTION B. At the end of the calendar month the total number of days credited will be deducted from the total number of days debited, and $1.00 per day charged for the remainder. If the credits equal or exceed the debits, no charge will be made for the detention of the cars, and no payment will be made to shippers or receivers on account of such excess of credits, nor shall the credits in excess of the debits of any one month be considered in computing the average detention for another month.

SECTION C. A shipper or receiver who elects to take advantage of this average agreement shall not be entitled to cancellation or refund of demurrage charges under Section A, Paragraphs 1 and 3, or Section B of Rule 8.

charge fixed by Rule 7 was $1 for each day, or fraction thereof, that a car is detained after the expiration of the free time. The ore in these cars was frozen in transit; and the company insisted that this detention of the cars beyond the "free time" had resulted from this fact and claimed exemption from demurrage charges under Rule 8, Section A, Subdivision 2, which declares that none shall be collected,

"When shipments are frozen while in transit so as to prevent unloading during the prescribed free time. This exemption shall not include shipments which are tendered to consignee in condition to unload. Under this rule consignees will be required to make diligent effort to unload such shipments."

The Kittanning Company had at its plant a device for thawing cars of frozen ore through "steaming." By this means it was able to unload as much as five cars of frozen ore a day. The daily average number of cars of frozen ore received during the three months was far less than five cars; but the number received on single days varied greatly. On many days none were received; on some only one or two; and on some, as many as thirty-five. The railroad contended that the standard to be applied for determining, under the rule here in question, whether unloading within the prescribed free time was prevented by the shipments being frozen, was, as in other cases under the code, the conditions applied to the car treated as a unit. It insisted, therefore, that the determination in any case whether a detention was due to the fact that the contents of a car were frozen could not be affected by the circumstances that a large number of such cars happened to have been "bunched"; and that, as each car considered separately could have been unloaded within the free time, the consignee must bear whatever hardship might result from many having arrived on the same day, unless relief were available to him either under the "Bunching

Rule" [1] or under the "Average Agreement." The question presented is that of construing and applying the frozen shipments clause. But, in order to determine the meaning or effect of that clause, it is necessary that it be read in connection with others.

The purpose of demurrage charges is to promote car efficiency by penalizing undue detention of cars. The duty of loading and of unloading carload shipments rests upon the shipper or consignee. To this end he is entitled to detain the car a reasonable time without any payment in addition to the published freight rate. The aim of the code was to prescribe rules, to be applied uniformly throughout the country, by which it might be determined what detention is to be deemed reasonable. In fixing the free time the framers of the code adopted an external standard; that is, they refused to allow the circumstances of the particular shipper to be considered.

When they prescribed forty-eight hours as the free time they fixed the period which, in their opinion, was reasonably required by the average shipper to avail himself of the carrier's service under ordinary circumstances. The framers of the code made no attempt to equalize conditions among shippers. It was obvious that the period fixed was more than would be required by many shippers most of the time, at least for certain classes of traffic; and that it was less than would be required by some shippers, most of the time, for any kind of traffic. Among the reasons urged for rejecting consideration of the needs or

---

[1] Rule 8, Section B. Bunching. . . . 2. When, as the result of the act or neglect of any carrier, cars destined for one consignee, at one point, are bunched at originating point, in transit, or at destination, and delivered by the railroad company in accumulated numbers in excess of daily shipments, the consignee shall be allowed such free time as he would have been entitled to had the cars been delivered in accordance with the daily rate of shipment. Claims to be presented to railroad company's agent within fifteen (15) days.

merits of the individual shipper, was the fear that, under the guise of exempting shippers from demurrage charges because of conditions peculiar to them, unjust discrimination and rebates to favored shippers might result.

In applying the allowance of free time and the charges for demurrage, the single car was treated throughout as the unit, just as it is in the making of carload freight rates. Compare *Darling & Co.* v. *Pittsburgh, etc., Ry. Co.*, 37 I. C. C. 401. The effect on the charges of there being several cars involved was, however, provided for by two rules: (1) The Bunching Rule, under which the shipper is relieved from charges, if by reason of the carrier's fault, the cars are accumulated and detention results. (2) The Average Agreement Rule, under which a monthly debit and credit account is kept of detention and the shipper is relieved of charges for detaining cars more than forty-eight hours by credit for other cars released within twenty-four hours.

It was urged that the use in this rule of the word "shipment" and not "car," implies that the whole consignment is to be considered in determining whether the delay was caused by the ore being frozen. Obviously the word shipment was used because it is not the car, but that shipped in it, which is frozen. Furthermore, the agreed facts do not state whether the cars, which by their number prevented unloading within the forty-eight hours, came in one consignment or in many.

Excessive receipts of cars is a frequent cause of detention beyond the free time even where shipments are not frozen. From the resulting hardship either the Bunching Rule or the Average Agreement ordinarily furnish relief. If the company had not elected to enter into the Average Agreement, the Bunching Rule might have afforded relief under the circumstances which attended the deliveries here in question. Since any one of the 227 cars on which demurrage was assessed might have been unloaded within

the forty-eight hours free time, the undue detention was not the necessary result of the ore therein being frozen, but was the result of there being an accumulation of cars so great as to exceed the unloading capacity. Compare *Riverside Mills* v. *Charleston & Western Carolina Ry. Co.,* 20 I. C. C. 153, 155; *Central Pennsylvania Lumber Co.* v. *Director General,* 53 I. C. C. 523. It does not seem probable that those who framed and adopted the frozen shipment rule and the Interstate Commerce Commission, which approved it, intended therein to depart from the established policy of treating the single car as the unit in applying demurrage charges as well as in applying carload freight rates. Such was the conclusion reached in the informal ruling of the Commission to which counsel called attention.

The judgment of the Supreme Court of Pennsylvania is

*Reversed.*