### SOUTHERN RY. CO. v. WHITE.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1922.)

No. 3684.

**1. Action ⬳12—Act of God causing breach of duty.**

When a duty is imposed by law and its performance becomes impossible on account of an act of God, there can be no recovery of damages for the breach.

**2. Carriers ⬳100(1)—Liability for demurrage imposed by law, and shipper relieved by act of God.**

The duty of an interstate shipper to load cars within the free time given by the tariffs, and the obligation to pay demurrage for their detention, are, in considering the effect of an act of God, to be classified with those imposed by law, and where a storm which destroyed a bridge on a logging road and prevented the return of cars taken over it for loading within the free time was of such extraordinary character that it should be called an act of God, it relieved the shipper from liability for demurrage.

Appeal from the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action at law by the Southern Railway Company against Hugh L. White, receiver. Judgment for defendant, and plaintiff appeals. Affirmed.

Robert Burrow, of Bristol, Tenn. (Lyle Burrow, of Johnson City, Tenn., on the brief), for appellant.

J. A. Susong and J. E. Biddle, both of Greeneville, Tenn., for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The business of the White Lumber Company having been carried on by a receiver under the direction of the court below, the railway company presented to the receiver its claim for about $1,350 demurrage. As we understand the record, the railway

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

had delivered to the receiver, upon the track connecting with a logging railroad operated by the receiver, certain empty cars, and by the terms of the demurrage tariff in force the receiver was allowed 48 hours of free time within which to take these cars to his loading point upon his logging railroad, load them, and return them to the railway company for transportation. The tariff also provided for the payment of a fixed amount per car per day for all time of detention in excess of the free time. Before the expiration of this time, a bridge upon the logging railroad was washed away and the immediate return of the cars became physically impossible. The claim as presented was composed of the amounts specified in the demurrage tariff for the number of cars that were not returned during the period of delay thus occasioned. The master, to whom the claim was referred, concluded that the receiver was not liable for the demurrage, and exceptions to his report were overruled by the court. Thereupon this appeal was taken.

The record is in very imperfect and unsatisfactory form. It strongly suggests an effort by stipulation to take the opinion of this court upon an abstract question of law; but we have decided to overlook its imperfections and to assume the situation which the parties probably intended the record to present, viz., that the storm which destroyed the bridge was of such extraordinary character and violence that the destruction ought to be called an act of God, and that after its destruction all the parties concerned used the utmost diligence in returning the cars at the earliest possible date. Thus arises the legal question whether an act of God constitutes such an excuse for holding the cars beyond the free time as will be sufficient to bar an action for recovery of the demurrage otherwise due.

[1] The diligence of counsel has not discovered, nor have we found, any decisions reaching the exact point. We think it a mistake to suppose, as counsel do, that the Interstate Commerce Commission has upheld the liability to pay demurrage under such circumstances. Each of the cases cited from its reports depended upon some other point. The question must therefore be decided upon the applicable general principles. We think it is a safe statement of the general rule to say that when a duty is imposed by law, and its performance becomes impossible on account of an act of God, there can be no recovery of damages for the breach; and it is not important whether this is merely a legal rule for the assessment of damages, or whether, wherever the law imposes a duty, it implies such an exception. The correlative part of the rule is that when a duty arises from an express contract, in which the promisor assumed an unqualified liability and in the making of which he was free to stipulate for any desired exceptions and yet made no exception on account of liability arising from an act of God, the existence of such act and of its consequences will not support a defense to an action against him for breach of his promise. 13 C. J. p. 641, note 76 (a), (b); Circuit Judge Sanborn, in Berg v. Erickson, 234 Fed. 817, 148 C. C. A. 415, L. R. A. 1917A, 648, and see cases cited on page 820, of 234 Fed., on page 418 of 148 C. C. A. (L. R. A. 1917A, 648).

[2] For the purpose of applying this rule, we conclude that the duty of the receiver to return the cars within the free time should be classi-

284 F.—36

fied with those duties imposed by law, although it doubtless has certain aspects of a contract obligation. Under the now familiar laws and rules controlling interstate commerce (and, in the court below, all parties assumed that such rules apply), the receiver had no freedom of contract. This demurrage tariff, like other tariffs, had been filed with the Interstate Commerce Commission and gone into effect. It would not have been within the power of the railway and the receiver to modify, in any substantial respect, the duties of each party to the other under that tariff. It contained certain exceptions to the universality of the obligation to return the cars within the time or pay the demurrage; but the receiver would have had no right to insist upon inserting any additional exception, and the railway company would have violated the law if it had granted any. Pennsylvania Co. v. Kittanning Co., 253 U. S. 319, 323, 40 Sup. Ct. 532, 64 L. Ed. 928. There is, therefore, an absence of that reason which alone supports a continuance of the unqualified liability in contract cases, and there is a full substantial presence of that reason which makes an exception in the performance of duties imposed by law. It is pertinent to observe that the carrier's duty to carry safely and deliver is one of the same class as that here involved, viz., one imposed by law, though called into activity in connection with a contract, and yet that an act of God is in such case clearly established to be an excuse for nonperformance. From this consideration of the applicable principles, it must follow that the receiver was not liable upon the claim asserted, and that the action of the court below was right.

We are informed by decisions of the Interstate Commerce Commission that many railroads have adopted the so-called average demurrage tariff, whereby the shipper or consignee has the optional right to receive cars under this average demurrage tariff instead of under the uniform demurrage tariff indicated by this record, and by which average demurrage tariff delays beyond the free time, occasioned by weather conditions, can be offset against anticipations of the return time limit made in other instances. It is quite apparent that such a situation would be different—perhaps materially—from that which we have considered.

The order is affirmed.