NORTON v. SUPREME FUEL SALES CO.
SAME v. SUPREME FUEL SALES CO.
et al.

Civil Actions Nos. 3042, 3597.

District Court, D. New Jersey.

June 9, 1947.

Hobart, Minard & Cooper, Duane E. Minard, and Duane E. Minard, Jr., all of Newark, N. J., for plaintiff.

Edmond J. Dwyer, of Newark, N. J., and Charles E. Cotterill, of New York City, for defendants.

MEANEY, District Judge.

Plaintiff, Henry K. Norton, as trustee of the New York, Susquehanna and Western Railroad Company, originally filed suit against defendant, Supreme Fuel Sales Co., a corporation, to recover unpaid demurrage charges and interest accrued thereon.

Subsequently, a second suit was instituted by the plaintiff against the same defendant, and in addition joining therein the individual defendants, both individually and as surviving directors and trustees of Supreme Fuel Sales Co., a corporation, and as partners trading as Supreme Fuel Sales Company. The second action seeks recovery of demurrage and interest, based upon the same facts as the first.

The matter is presently before the court on plaintiff's motion for consolidation of the two actions and for summary judgment, pursuant to Federal Rules of Civil

Procedure, rule 56, 28 U.S.C.A. following section 723c, and is submitted on the pleadings, affidavits and documentary evidence.

These actions seek recovery of demurrage charges assessed against the defendants under the applicable freight tariff (No. F 209, I.C.C. No. 2855 and supplements thereto) for detention at destination of 406 cars of coal during the period from February to June, inclusive, in 1943.

The defendant corporation, Supreme Fuel Sales Co., was incorporated under the laws of New Jersey on May 9, 1933. In 1936, the said corporation entered into an agreement with the plaintiff railroad for determining the average basis of settling for detention of cars as set forth in N.Y.S. & W. Tariff No. F. 209–N, I.C.C. No. 2855.

On January 28, 1938, the Charter and powers of the defendant corporation were revoked by executive proclamation, and as contended by the defendant, it has not since that date conducted any business of any kind whatsoever.

On May 1, 1938, a certificate of partnership of the Supreme Fuel Sales Company was filed, said partnership consisting of Adolph Jurgensen and Edna Jurgensen, who were officers and directors of the corporation and having its place of business at the same address as the former corporation. In bringing these actions the plaintiff has joined the said Adolph Jurgensen and Edna Jurgensen as parties defendant, both *individually* as surviving directors and trustees of the corporation, and as partners trading as Supreme Fuel Sales Company.

The plaintiff contends that the liability for the demurrage, if any, is that of the corporation and must be assessed under the terms and conditions of the Average Agreement entered into between the corporation and the plaintiff railroad. This contention is based upon the allegation that, even though the corporate powers were revoked by executive proclamation, nevertheless, the corporation has continued in business without interruption under the name of Supreme Fuel Sales *Co.,* and that if they are correct in this contention, then the defendants are bound by the terms and conditions of the agreement. The defendants deny vigorously that the corporate business

has been continued, and insist that the plaintiffs knew, or should have known, that since 1938 they have been dealing with the partnership Supreme Fuel Sales Company, and that the detained cars in question on which demurrage charges were made, were delivered on the order of Supreme Fuel Sales Company, the partnership.

From the affidavits and exhibits offered by the plaintiff in proof of its contentions, and the affidavits of the defendants, the court is of the opinion that notwithstanding the proclamation of the Governor, the business of the corporate defendant, *in its relations with the plaintiff* may have been conducted as usual in the corporate name, but cannot so find as a matter of fact. During that period the corporation was not dead (Reade v. Broadway Theater Co., 99 N.J.Eq. 282, 132 A. 477), but until there is a reinstatement entitling the corporation to continue its business and franchise, the Charter of the corporation is inoperative and void, and the officers and directors have only the powers of conserving and disposing of assets, paying debts and closing out the business. Any further acts which may have been performed by the individual defendants in conducting the business on behalf of the supposedly legal corporation would result in their becoming personally liable as individuals, and this is so even if it were to appear that such liability was incurred in good faith. Studerus Oil Co. v. Bienfang, 122 N.J.L. 238, 4 A.2d 787.

Whether, in their relations with this plaintiff, the individual defendants continued to hold themselves out as the corporation, taking the benefits incident to such a continued relationship, is a matter that can be determined only on a hearing. On the determination of this question would depend whether or not the average agreement continued in effect and whether the terms and conditions thereof remained in force and controlled in the matters here in issue.

This finding is arrived at after examination of voluminous records and documents, perusal of which would indicate that factual questions are at issue, as are the legal principles involved. Therefore,

the court is precluded from entering summary judgment.

However, as to the defense of "bunching" it might at this time be noted for such appropriate action as may be made, that the court feels that this is an invalid defense.

The defense is grounded on the argument that the car detention from which the demurrage claims grew was caused by the bunching of such cars on delivery by the plaintiff railroad and, therefore, no demurrage charges are assessable. If, on the final hearing, there is a finding that the parties to this suit are bound by the terms of the average agreement, the defense of bunching is unavailing and may not be urged. Pennsylvania R. Co. v. Kittaning Iron & Steel Mfg. Co., 253 U.S. 319, 40 S.Ct. 532, 64 L.Ed. 928. Moreover, the terms of the average agreement as provided in rule 9(E)[1] specifically prohibit cancellation or refund of demurrage charges because of bunching under the reasons asserted in this case by the consignee.

Conversely, if on final hearing, there is a determination that the terms and conditions of the average agreement are not controlling in the matters here in issue, the defense of bunching may be made, provided, however, that "claim (was) presented in writing to (the) railroads agent within 30 days * * * after the date on which bill for demurrage (was) rendered," as re- quired by Rule 8, Section B(2) of freight Tariff 4–W.[2]

There is no proof by affidavit or otherwise that the rule requiring written notice was complied with. Indeed the defendants in their brief attempt to overcome their failure to give notice by the contention that, since they are merely defending a suit against them and are not making a "claim" of any sort against the carrier which would be required to be in writing and within a stated time, this situation is not one within the purview of the notice requirement of Rule 8 of the said tariff, supra.

The court finds this contention to be without merit. The above rule requires that notice be given if a claim is to be made for an allowance for free time as provided. The failure to give such notice and make such claim precludes the allowance of any such free time. If the court were now to accede to defendants contention, it would in effect allow by judicial interpretation that which has been denied the defendants under the tariff rules because of the failure to comply with the notice requirements thereof. Whether a defendant made a claim for free time allowance, or was permitted to assert the railroad's fault as a defense at a trial for demurrage charges, would make little difference insofar as the ultimate result was concerned. Hence, to permit such a de-

---

[1] Rule 9, Section E. A party who enters into this agreement shall not be entitled * * * to cancellation or refund of demurrage charges under * * * Section B of Rule 8, * * * except when bunching has been caused by floods, earthquakes, hurricanes or tornadoes, and conditions in the devastated area resulting therefrom, strike of railroad's employees, or where shipments of coal, withheld by the railroad to protect its fuel supply, are subsequently delivered to consignee in accumulated numbers.

[2] Rule 8, Sec. B–2. Bunching: Cars for unloading or reconsigning. When, as the result of the act or neglect of any railroad, or because of floods, earthquakes, hurricanes or tornadoes and conditions in the devastated area resulting therefrom, cars originating at the same point, moving via the same route and consigned to one consignee at one point, are bunched, or when cars originating at different points and transported via the same route from an intermediate common point to destination are bunched after arriving at the common point (in which event the dates of arrival of the cars at common point will govern in determining the bunching instead of the dates of shipments), and are tendered for delivery by this railroad in accumulated numbers in excess of daily shipments, the consignee shall be allowed such free time as he would have been entitled to had the cars not been bunched, but when any car is released before the expiration of such free time, the free time on the next car will be computed from the first 7:00 a.m. following such release; provided, however, no allowance will be made unless claim is presented in writing to this railroad's agent within thirty days, exclusive of Sundays and legal holidays, after the date on which bill for demurrage is rendered, supported by a statement showing date and point of shipment of each car involved in the bunching claim.

fense to be raised where there had been a previous failure to make a written claim, would permit a defendant were a demurrage action instituted to gain the benefit of free time when the same would be denied him were no action commenced.

There is no affirmative proof that notice under rule 8(b) (2) of the tariff was given and the proofs of the plaintiff being to the contrary, the asserted defense is invalid and will not be allowed. Cf. Norton, Trustee v. N. B. Fairclough, Inc., D.C.N. J., 72 F.Supp. 308, an opinion by Judge Smith.

The remaining defenses urged, involving factual as well as legal questions, raise substantial questions of fact, and since this court on this motion functions solely to determine whether there is such substantial issue of fact, entry of summary judgment may not be made. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016.

Plaintiff's motion for summary judgment, accordingly, is denied.

The motion for consolidation of the two actions will be granted.