**ST. LOUIS, SOUTHWESTERN RAIL-
WAY CO., Plaintiff**

v.

Robert H. MAYS, d/b/a Robert H. Mays
Company, Defendant.

Civ. No. 3125.

United States District Court
E. D. Arkansas, W. D.

June 6, 1959.

Ned A. Stewart, Texarkana, Ark., for plaintiff.

Orion E. Gates, Monticello, Ark., for defendant.

HENLEY, District Judge.

█ This is an action brought by the plaintiff, an interstate rail carrier of freight, to recover from the defendant the sum of $878.55,[1] plus interest, alleged to be due as demurrage on a number of freight cars consigned and delivered to the defendant for unloading during a period commencing in March 1954 and running through December, 1955. The demurrage charges which the plaintiff seeks to collect are prescribed by its duly published tariffs on file with the proper regulatory agencies.

The defendant does not question the receipt of the cars, nor does he deny that they were not unloaded by him within the forty-eight hours "free time" allowed by the tariffs; nor does he question the calculations contained in the exhibit to the complaint. His position is simply that he was prevented from unloading the cars within the allotted time by adverse weather conditions, and by the alleged acts of the employees of the plaintiff, who, it is claimed, "kicked the cars off the loading spot of the defendant and failed to place them back in position". In this connection, the parties have stipulated that "the only issue involved in this case is the contention on the part of the defendant that defendant was prevented from unloading certain carload shipments due to the very poor weather and to the fact that employees of the plaintiff railway company while engaged in other switching kicked the cars off the loading spot of the defendant and failed to place them back in position".

After issue had been joined, the plaintiff filed the instant motion for summary judgment, asserting that the case presents no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P., 28 U.S.C.A. Said motion has been submitted upon the complaint and exhibits thereto, the defendant's answer and amendment to answer, the stipulation above mentioned, copies of the applicable demurrage rules, and written briefs.

█ In passing upon this motion the Court is governed by the well settled rule that it is not the function of the Court in passing upon a motion for summary judgment to decide disputed factual issues, but simply to determine whether such issues exist, and that in making such determination the case must be viewed in the light most favorable to the party opposing the motion. All reasonable presumptions are to be indulged and inferences drawn against the motion, and the burden is upon the movant to convince the Court beyond a reasonable doubt that there are no genuine issues as to any material facts, and that he is entitled to judgment as a matter of law. 3 Barron & Holtzoff, "Federal Practice & Procedure", § 1235, and cases there cited.

█ "Demurrage" is a charge exacted by a carrier from a shipper or consignee on account of a failure on the latter's part to load or unload cars within the free time prescribed by the applicable tariffs. 9 Am.Jur. "Carriers", § 598; 12 Words and Phrases, Demurrage and Demurrage Charge. The purpose of the charge is to expedite the loading and unloading of cars, thus facilitating the flow of commerce, which is in the public interest. Ibid. The subject of demurrage is, in general, governed by the "Uniform Demurrage Code", which was adopted in 1909 by the National Convention of Railway Commissioners, and was approved by the Interstate Commerce Commission and ordered by that body to be put into effect throughout the country. In re Demurrage Investigation, 19 I.C.C. 496; Swift & Co. v. Hocking Valley R. Co., 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722.

---

1. Jurisdiction of this court is predicated upon 28 U.S.C.A. § 1337; a motion to dismiss for want of jurisdiction that was filed by the defendant has been heretofore overruled.

■■ In the application of the rule that carriers, shippers and consignees are bound by the provisions of the tariffs filed by the former, it is now well settled that where, as here, demurrage charges are prescribed by tariff, and where a liability for such charges accrues, the carrier is under a duty to collect and the shipper or consignee is under a duty to pay the same. They have no choice in the matter, and it is not a legitimate subject for compromise or settlement between them. Garrison Coal Co. v. Hines, 118 Okl. 251, 247 P. 62, 46 A.L.R. 1151; Southern R. Co. v. White, 6 Cir., 284 F. 560, 26 A.L.R. 1429; St. Louis-Southwestern Ry. Co. v. Farrell, D.C.Ark., 114 F.Supp. 486; Chicago, B. & Q. R. Co. v. Blunk, D.C.Iowa, 101 F.Supp. 219. Were the law otherwise, waivers and adjustments of demurrage claims would be ready means for the effectuation of prohibited preferences, discriminations and rebates. See Pennsylvania R. Co. v. Kittanning Iron & Steel Mfg. Co., 253 U.S. 319, 324, 40 S.Ct. 532, 64 L.Ed. 928, and Chicago, B. & Q. R. Co. v. Blunk, supra, 101 F.Supp. at page 222. In order for a liability for demurrage to exist, however, the failure to load or unload the cars within the free time must be the fault of the shipper or consignee; and, conversely demurrage cannot be charged where such failure was due to the fault of the carrier. 9 Am. Jur., supra, § 606; Southern R. Co. v. White, supra; Southern Ry. Co. v. Aluminum Co. of America, D.C.Tenn., 119 F. Supp. 389, affirmed 6 Cir., 210 F.2d 139.

With these general principles in mind, we approach the problem in hand.

■ With regard to the contention that the failure to unload the cars promptly was due to adverse weather, Rule 8 of the tariff provides for a refund or cancellation of demurrage charges where the delay is due to extreme weather conditions. Said Rule requires, however, that a claim for relief be filed by the consignee or shipper within 30 days after the date on which the demurrage bill is rendered. That requirement is a condition precedent to obtaining relief under the Rule, Norton v. N. B. Fairclough, Inc., D.C.N.J., 72 F.Supp. 308; and since the defendant apparently admits in his brief that no such claims were filed, he cannot prevail on that theory, and if alleged adverse weather constituted his only defense, the motion would be granted.

But, the defense to this action is not predicated solely upon adverse weather. The defendant further contends that the employees of the plaintiff interfered with the cars by kicking them from their loading spot and failed to put them back. This defense appears to raise certain issues of fact with respect to the cars alleged to have been interfered with, and requires the denial of the motion.

It has already been pointed out that demurrage cannot be collected where the delay is not due to the fault of the shipper or consignee or where it is caused by the fault of the carrier; and it would appear that unreasonable interference with the cars by the carrier would preclude the collection of demurrage to the extent that the delay in unloading was proximately caused by such interference. Such was the holding in Garrison Coal Co. v. Hines, supra, which seems to be the only reported case dealing with the specific question under consideration.

While the Court in that case was of the opinion that unreasonable interference with cars after they had been placed for unloading would free the consignee from his obligation to pay demurrage on account of delay resulting from such interference, it was careful to point out that the carrier might be required in the reasonable and ordinary course of its business to subject the cars to some disturbance, and that such a reasonable interference would not operate to extend the consignee's free time. In that connection, it was said:

"The matters of disturbance and moving of cars after placement for unloading by the consignee on account of necessary and reasonable switching of shipments for other consignees at the station, and the movement of trains and cars as nec-

essarily and reasonably involved in the conduct of the carrier's general business about the station, were involved and entered into the establishment of the 48-hour period of 'free time'. The same matters were involved in fixing the amount of the demurrage charges for delays. Therefore, the length of time in which the consignees are allowed to unload their freight and the penalties provided for delays beyond the 'free time' were measured according to the usual conduct of the carrier's business. There may be numerous business concerns and people who will require the carrier's facilities in the conduct of their business at the station. It is the duty of the carrier to furnish reasonable trackage facilities and means to serve the consignees at the particular station as measured by the volume of business handled in and out of the station. Each consignee and shipper at the station is entitled to the service which reasonable facilities ought to afford him. The displacement of cars and consequential delays to shippers and consignees may result at particular stations, even though the carrier is affording reasonable means and facilities for the conduct of its business at the particular station. The consignee must bear such losses out of his 48 hours' 'free time' as result from the reasonable conduct of the carrier's business at the station. The liability of the shipper or consignee to bear the delay depends upon whether the carrier has furnished reasonably adequate facilities for handling the general business at the station, and whether the disturbance of the cars after placement was reasonably necessary, if reasonable facilities had been afforded the general public at the station. If it became necessary for the carrier to displace cars within the 48-hour period of time in the reasonable conduct of its business at

the station, it was the duty of the carrier to replace such cars for unloading with reasonable dispatch, consistent with the general conduct of the carrier's business at the station, as measured by the facilities required to meet the demands of the public at the station. These matters are questions of fact for determination by the jury, or the court, in each particular case according to the foregoing rules. Therefore it is a mixed question of fact and law for the jury upon proper instructions of the court as to the liability of the carrier for displacement of cars within the 48-hour period of 'free time' for unloading the cars * * *." 247 P. at page 64, 46 A.L.R. at pages 1154–1155.

In an annotation entitled "Demurrage as affected by displacement of cars by carrier", appearing in 46 A.L.R. at page 1156, it is said that the decision in the Hines case is in accord with the following language in 4 R.C.L. 865:

"'No demurrage can be exacted by a carrier unless the delay in unloading is clearly attributable to the fault of the consignee. But in construing a regulation of a common carrier for unloading freight cars, and providing that the cars are to be placed and remain accessible to the consignee for the purpose of unloading, the course and exigencies of business are necessarily to be regarded; hence the cars, after their arrival at destination, though not kept accessible at every moment of time, are to be treated as being and remaining accessible, if the carrier is always ready to render them so within the shortest practicable time, not longer than a few hours, after being notified that the consignee is ready to unload.'"

The annotator then cites two cases which appeared to him analogous, and concluded the annotation by saying: "These decisions indicate that the rule of reason, as applied in the Hines case

is the proper solution of the difficulties arising under the present question".

In order to dispose of the pending motion it is not necessary to pass upon the ultimate validity of the defendant's contention based on the alleged displacement of cars; that will have to be determined at the trial. Suffice it to say that it presents a problem having factual aspects, and this being true the case is not one for summary judgment.

It is, therefore, by the Court considered, ordered and adjudged that the defendant's motion for summary judgment be, and the same hereby is, overruled.