**MISSOURI PACIFIC RAILROAD COMPANY, Plaintiff-Appellant,**

v.

**C. W. TERRELL, Defendant-Respondent.**

No. 8540.

Springfield Court of Appeals.

Missouri.

Dec. 5, 1966.

Motion for Rehearing and to Transfer to Supreme Court Denied Dec. 30, 1966.

Riddle, O'Herin & Newberry, Malden, for plaintiff-appellant.

Blanton, Blanton & Rice, David E. Blanton, Sikeston, for defendant-respondent.

TITUS, Judge.

Missouri Pacific Railroad Company sued C. W. Terrell in four counts for demurrage in the respective amounts of $196 (April 1, 1958), $1,884 (February 1, 1961), $1,672 (February 1, 1961), and $256 (January 25, 1963), together with interest (six per cent, V.A.M.S. § 408.020) from the demand dates parenthetically shown. Without a jury, the Circuit Court of Scott County, Missouri, entered judgment for defendant and the railroad appealed. Only interest earned prior to judgment date and the principal are computed to determine the jurisdictional amount in dispute on appeal. Berry v. Crouse, Mo.App., 370 S.W.2d 724, 725(1, 2); Beckemeier v. Baessler, Mo. App., 261 S.W.2d 511, 512. Our calculations, on this basis, indicate the total sum

in controversy to be $5,145.80, so we have jurisdiction. V.A.M.S.Const. Art. 5, §§ 3 and 13; V.A.M.S. § 477.040.

Defendant, a dealer in agricultural lime, had private tracks at facilities he maintained on ground leased from plaintiff in Sikeston and Charleston, Missouri. The petition's counts concern lime consigned to defendant at his two plants and shipped at his convenience from Piedmont, Missouri, on four occasions in February 1958, March 1960, February 1961, and January 1962.

Under applicable tariffs duly filed with the Interstate Commerce Commission and Public Service Commission of Missouri, demurrage rules permitted defendant forty-eight hours' free time to unload cars after arrival. Demurrage at $4 per day was charged for the first four days following the free time, and thereafter the per diem demurrage was $8. Section A, Rule 8 of Demurrage Rules and Charges provided: "* * * 2. When, at the time of the actual placement, lading is frozen or congealed so as to require heating, thawing or loosening, to unload, the free time shall be extended * * * not to exceed a maximum of two days," provided the consignee gives the carrier the required notice, which was done here.

Demurrage average agreements, optional with and voluntarily entered into by the parties pursuant to Rule 9 of the tariffs, permitted defendant to receive a credit for each car released during the first twenty-four hours of free time and charged defendant with a debit per day for each car held beyond the allowable free time. The credits and debits thus accumulated in a calendar month were figured together to determine the amount of demurrage, if any, due plaintiff from defendant.

Each shipment subject to this controversy arrived frozen and the cars were not unloaded by defendant within the free time allowed or extended by Rule 8. Defendant does not dispute plaintiff's figures on the demurrage charges. Simply stated, defendant's position is that since he used diligence (which was stipulated) to unload the cars as soon as the lime thawed by rising temperatures, he should be excused for failure to unload the cars on time as his performance was rendered impossible by an act of God or, depending upon abilities at linguistics, vis major, force majuere, or höhere Gewalt. Allusion is also made by defendant to terms of "unavoidable accident" and "stress of circumstances." Neither party has cited nor have we found any reported case precisely parallel with the presented issues.

Some authorities (among admitted confusion) indicate demurrage can be cancelled only under circumstances specified in the tariff even though detention of the cars over the free time is beyond the control of the shipper or consignee.[1] Plaintiff insists we apply what is sometimes denominated vestus jus, which provided neither hell, high water, impossibility, nor acts of God would excuse duties voluntarily assumed by contract. Defendant concedes that had the tariffs been conceived of a union freely made by the parties, he would be bound to honor and obey the demurrage regulations. He asserts, however, his accouplement to the tariffs personified freedom of contract no better than a wedding vi et armis and that we are required to distinguish duties voluntarily assumed from relational duties imposed by law where parties, for example, assume the relationship of common carrier and consignee.[2]

---

1. Reading Company v. Commodity Credit Corp., 3 Cir., 289 F.2d 744, 749(3, 4); Pennsylvania Railroad Co. v. Kittaning Iron & Steel Mfg. Co., 253 U.S. 319, 40 S.Ct. 532, 64 L.Ed. 928, 930; Anno: 44 A.L.R., pp. 829 et seq.

2. Chicago, B. & Q. R. Co. v. Blunk (D.C. Iowa), 101 F.Supp. 219, 220(6); Southern Ry. Co. v. White, 6 Cir., 284 F. 560, 561–562(1), 26 A.L.R. 1429; Williston on Contracts, 3rd Ed., § 32A, pp. 88–92; 6 Corbin on Contracts, § 1324, pp. 335–337; 17 Am.Jur.2d, Contracts § 404, p. 852.

Defendant additionally contends where obligations or duties are imposed by law, impossibility, an act of God or unavoidable accident will absolve him from liability.[3] This smacks of what some authorities previously cited describe as a departure from the strict law of voluntary contracts, and while we have not found and undertake no judicial comparison of what excuses under Missouri law will relieve a party from voluntarily assumed obligations and those imposed by law, a fleeting blush indicates little distinction in the areas suggested by defendant. The Missouri Supreme Court, en Banc, in Ellis Gray Milling Co. v. Sheppard, 359 Mo. 505, 222 S.W.2d 742, 748(5), said, "So far as we can find, the rule in this state announced in Ward v. Haren, 139 Mo.App. 8, 14, 119 S.W. 446, 448, has not since been departed from, that 'if a party, by his contract, charge himself with an obligation possible to be performed, he must make it good unless its performance is rendered impossible by an act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him.' " Accord, Stein v. Bruce, Mo.App., 366 S.W.2d 732, 734(1).

Plaintiff insists the voluntary entry of the parties into the demurrage average agreements as allowed by Rule 9 removed the relationship from that strictly imposed by law and requires application of rules relating to obligations freely made. Southern Ry. Co. v. White, supra, 6 Cir., 284 F. 560, 26 A.L.R. 1429, did not involve a demurrage average agreement. Nevertheless, the court said, 284 F. l. c. 562: "We are informed * * * many railroads have adopted the so-called average demurrage tariff, whereby the shipper or consignee has the optional right to receive cars under this average demurrage tariff instead of under the uniform demurrage tariff indicated by this record, and by which average demurrage tariff delays beyond the free time, occasioned by weather conditions, can be offset against anticipations of the return time limit made in other instances. It is quite apparent that such a situation would be different—perhaps materially—from that which we have considered." The terms of the demurrage average agreements certainly could serve to afford relief to defendant under the circumstances attending the deliveries here in question. Pennsylvania Railroad Co. v. Kittaning Iron & Steel Mfg. Co., supra, 253 U.S. 319, 324, 40 S.Ct. 532, 64 L.Ed. 928, 930–931. Since obiter dictum, such as found in the last two cited cases, does not often freeze sufficiently to permit safe skating, and, as it seems unnecessary, we decline to test the weight of this decision on what may or may not be thin ice.

Irrespective of the different approaches made by the parties to the issues, the general rule appears to be that the duty of a consignee to unload cars within the free time given or specifically extended by the tariffs, and his obligation to pay demurrage for overtime detention, are obligations imposed by law, and where consignee's failure to unload within the free time is entirely due to an act of God or vis major, consignee shall not be liable for demurrage. Norfolk Southern Ry. Co. v. Glover, 222 N.C. 594, 24 S.E.2d 250, 251(1), and cases previously cited.

■ The alleged impossibility of defendant's performance within the free time provided and extended by the tariffs is solely attributable by him to an act of God or vis major in the form of temperatures which froze the lading. He makes no claim and offered no evidence the lime arrived frozen through any fault of the carrier. Neither does defendant assert the freezing temperatures were rare for the season in which shipments were made at his convenience. The exhibits of record show

---

3. Southern Ry. Co. v. White, supra, 6 Cir. 284 F. 560, 561(1), 26 A.L.R. 1429; Berg v. Erickson, 8 Cir., 234 F. 817, 820 (2 and 3), L.R.A.1917A, 648; Chesapeake & O. R. Co. v. Board, 100 W.Va. 222, 130 S.E. 524, 44 A.L.R. 826; 13 Am.Jur.2d, Carriers § 487, pp. 955–956.

temperatures in the period involved in February 1958 ranged from a low of minus two degrees to a high of forty-six degrees. In March 1960 the low was ten degrees and the high sixty degrees. Temperatures during the latter part of February and in March 1961 went from twenty degrees to fifty-five degrees, and in January 1962 varied from minus five degrees to fifty degrees. These figures merely reflect what is common knowledge and corroborate an admonition attributed to Samuel Clemens that "If you don't like Missouri weather, wait a minute."

 An act of God "is an event in nature so extraordinary that the history of climatic variations in the locality affords no reasonable warning of their coming." Corrington v. Kalicak, Mo.App., 319 S.W. 2d 888, 892(3). "[F]reezing weather coming especially in that season of the year, when such weather may be expected, cannot be brought within the definitions * * * of the act of God or inevitable accidents * * *" McGraw v. Baltimore & Ohio Railroad Co., 18 W.Va. 361, 41 Am.Rep. 696, 699. Also see M. F. A. Farmers Exchange of Carthage v. Kurn, Mo.App., 205 S.W.2d 878, 881(1); Miller v. United States (D.C.Del.), 192 F.Supp. 218, 220(3); 1 C.J.S. Act, p. 923. "An 'act of God' * * * is an occurrence due to natural causes against which ordinary skill and foresight is not expected to provide." Buschelberg v. Chicago, B. & Q. R. Co., Mo.App., 289 S.W.2d 447, 449 (2). The most that can be said for the record before us is that freezing temperatures occurred in Missouri in the months of January, February, and March of the years indicated by the exhibits. This not only fails to suggest the occurrence of an act of God, but equally defaults in aludement to any but the usual, ordinary and expected weather. What did in fact occur was anticipated and specifically recognized by the tariffs. The impossibility contended by defendant is referable not to practicable, factual, or physical impossibility, but to impossibility for him to unload the cars in the manner he customarily employed during warm weather or when temperatures were above freezing. As foreseen by the tariffs, there would be times when defendant would be required to resort to "heating, thawing, or loosening" frozen lading in order to remove it from the cars. When such burden was cast upon defendant the rules provided some compensation therefor by allowing an extra forty-eight hours to unload without liability for demurrage. Although frozen lading may suggest inconvenience or even additional expense to defendant in unloading the lime, impossibility to constitute a legal excuse is not made to appear.

 There is nothing in this case to cause departure from well established law that the published tariffs and demurrage rules were binding on both plaintiff and defendant with the force of law, and defendant's liability to pay the demurrage charges could not be waived by estoppel, any agreement, understanding, or course of conduct between the parties. Application of the tariffs must be objective and not attuned to consideration of the needs or merits of an individual consignee in a given case.[4]

4. Chesapeake & O. Ry. Co. v. Gorman, 300 Ky. 230, 188 S.W.2d 316, 318–319(1); Union Transfer Co. v. Renstrom, 151 Neb. 326, 37 N.W.2d 383, 385(3); Chicago & N. W. Ry. Co. v. Mallory, 147 Neb. 548, 23 N.W.2d 735–738(1); Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 520–521, 59 S.Ct. 612, 83 L.Ed. 953, 957; Crancer v. Lowden, 8 Cir., 121 F.2d 645, affirmed 315 U.S. 631, 62 S.Ct. 763, 86 L.Ed. 1077; Southern Ry. Co. v. Aluminum Co. of Amer. (D.C. Tenn.) 119 F.Supp. 389, 393(1); 49 U.S.C.A., §§ 2, 3(1), 6(7); V.A.M.S. § 387.100; Davis v. Keystone Steel & Wire Co., 317 Ill. 278, 148 N.E. 47, 51(5); St. Louis, Southwestern Ry. Co. v. Mays (D.C.Ark.), 177 F.Supp. 182, 184(5, 6); Scandrett v. Worden-Allen Co., 238 Wis. 272, 299 N.W. 52, 56(6); Mellon v. Stockton & Lampkin, 326 Mo. 129, 30 S. W.2d 974, 975(2), 225 Mo.App. 122, 35 S.W.2d 612, 613(1, 2); Wabash R. Co. v. Berg, Mo.App., 318 S.W.2d 504, 509–510 (2).

For the reasons stated, the judgment of the trial court is reversed and remanded with directions to set it aside and to render judgment in favor of plaintiff (appellant) on each count of the petition for the calculated demurrage due, together with interest on each sum from the date when payment thereof was demanded to date of such judgment entry.

STONE, P. J., and HOGAN, J., concur.