Jack **GENOVA**, Respondent,

v.

**CITY OF KANSAS CITY**, Missouri, Appellant.

No. 25947.

Missouri Court of Appeals, Kansas City District.

June 4, 1973.

Motion for Rehearing and/or Transfer Denied July 23, 1973.

**556**

·Aaron A. Wilson, City Counselor, Thomas C. Clark, Asst. City Counselor, Kansas City, for appellant.

Lloyd S. Hellman and William J. Gotfredson, Kansas City, for respondent; Achtenberg, Sandler & Balkin, Kansas City, of counsel.

Before DIXON, C. J., PRITCHARD and SOMERVILLE, JJ., and WILLIAM J. MARSH, Special Judge.

PRITCHARD, Judge.

Upon the theory of nuisance, plaintiff recovered a judgment pursuant to the verdict of a jury against defendant in the amount of $3,640.00 for water damage to plaintiff's building at 2826, 2828 and 2830 McGee Trafficway, in Kansas City, Missouri.

■ Plaintiff has filed a motion to dismiss defendant's appeal upon the ground that its statement of facts is not fair and concise as required by Rule 84.04(c), V.A. M.R.: "The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument. Such statement of facts may be followed by a resumé of the testimony of each witness relevant to the points presented." Defendant has amended its statement of facts to conform to the rule. Plaintiff's motion to dismiss the appeal is therefore overruled.

Defendant City is the owner of land occupied by Union Cemetery, 227 East 28th Street, as a result of an ordinance passed on March 15, 1937, accepting a deed to it. Since that time the City has maintained the cemetery as a park, including an open drain beginning at the south wall, then running along its east wall. Minor repairs, consisting of filling in concrete between the tile joints of the drain, and filling in between the tile drain and the cemetery wall, were done, according to the City.

Plaintiff, a resident of Kansas City for 65 years, bought land at 2826, 2828 and

2830 McGee Trafficway (just east of the cemetery) in 1943. He tore down all the buildings and built the three new ones, with sidewalks, in late 1956 and in 1957. One roof takes care of all three buildings. To the west of plaintiff's buildings, and behind a north-south concrete and rock retaining wall, the cemetery grounds slope downward to the east and north. The very shallow, open drain tile (constructed of split tiles joined with a "bell") begins at the corner of 29th and Oak and runs north to the northwest corner of plaintiff's building.

In the summer of 1969, plaintiff received a call from his tenant at 2830 McGee as to water problems. When he arrived there plaintiff saw water coming from the west onto the side wall, then off to the street. In various places the water inside the building was popping up 2, 3 or 8 inches high. "As I went behind the partition of the west wall I saw water coming out of the mortar joints, out of the concrete blocks. How many, I don't know. It looked like a rubber hose coming out." Plaintiff observed the condition of the tile drain in the cemetery after he was flooded. Some were flat, some were higher than others, and the mortar joints were gone. In some places under the tile a shovel would go in from four inches to as far as it would go because the dirt was washed out underneath in spots for as much as 20 or 30 feet or more.

After the flood, wood timbers were placed by plaintiff temporarily on the cemetery wall, then one tier of concrete blocks was added, with two more tiers later added, to hold back the water from the cemetery. Plaintiff filled in the holes underneath the tiles with rock and "buckshot", "choked it out with mortar, cement, rock and sand" on the west side of the drain tile, which was full of leaves and beer cartons.

Inside the building there was a drain at 2826 McGee Trafficway but it was too small to take out the water. Another drain was in the boiler room of 2830 McGee Trafficway which was partially plugged with dirt and mud in the summer of 1969.

On the day of the flooding, plaintiff's son, Jack Genova, Jr., was at the scene. The roof of the buildings were inspected, and there was no leak except a minor one from a water tower base, which leak was repaired. He described the cemetery drain slope: "It kind of slopes up north then like it almost levels all the way up here, so there is no chance of water running—the water getting there." He observed the water sitting there after it rained. The water came off the hill so fast that it would jump or land on the tile and run over like a falls. It was like an ocean of water which would come down the wall directly behind plaintiff's building. Other water was coming from the south, and it would all meet in the same place. Inside the building at 2826 McGee Trafficway, "the water would literally shoot out in a stream out of the wall in pressure—would push out and where ever the water had such tremendous force, cracked out parts of the concrete would literally shoot out of the wall."

Added to the testimony of plaintiff and his son is that of plaintiff's maintenance employee, Hershel Ford. He corroborated their testimony as to the condition of the tile drain when he saw it the day of the flood. He found the tile with water backed over it alongside the fence, and he found holes under the tiles, "I called it a ditch up under there." Water came off the cemetery hill, ran out into the (tile), and water went over it and over it along its length. The tile drain sloped south to north until it got to plaintiff's building, where it ran out flat, "where the water stands clear across there." More water went under the cemetery wall than over it. Jack Genova, Jr. had testified that every so often the tile, where the water had come up from the trench in front of it, had uplifted almost all the way across between 2830, 2828 and 2826 McGee Trafficway. It was like the concrete and mortar be-

tween the tile joints were gone. On the side closest to plaintiff's building, the concrete had cracked along its length, and there was a trench under the tile varying from an inch to forty-five inches in depth all along the back of the building.

■ The City's first point is that plaintiff's damage Instruction No. 5, authorizing the jury to award any damages "which you believe he sustained as a direct result of the occurrence mentioned in the evidence" is in error. The reasons assigned are that the evidence established multiple occurrences of water damage, and the instruction failed to eliminate damages sustained to plaintiff's property due to a leaky roof and a stopped-up interior floor drain; or due solely to Acts vis Major. Plaintiff and his witnesses conceded that there were two leaks in the roof of the building which were immediately repaired. There is no evidence that these leaks caused the damage to the building. If there had been evidence of other causes for which the City would not be liable, then it could have offered a withdrawal or clarifying instruction under MAI 34.00 and 34.02, and Committee's Comment, p. 376, which it did not do. As to the Act of Vis Major, and considering what the City's witness, Allen D. Pearson, U.S. Meteorologist, testified to as to the summer months of June, July and August, 1969, being the wettest months in Kansas City's history (there was then no flash flood), yet under Geiger v. City of St. Joseph, 198 S.W. 78 (Mo.App.1917), that testimony would not require an instruction on "other occurrences." In Geiger, as here, the rains were not so heavy as to come within the definition of the term "act of God," as to be a *sole cause* of the damage. The court noted that the effect of the heavy rains was only to increase the amount of water flowing over plaintiff's lot by reason of a choked sewer, again, much the same as here. In Somerset Villa, Inc. v. City of Lee's Summit, 436 S.W.2d 658 (Mo.1968), the plaintiff's action was against two defendants, one for nuisance, the other for negligence, and there was no

evidence of two or more causes of the one damage. In Jurgeson v. Romine, 442 S. W.2d 176 (Mo.App.1969), there were two separate causes of damage: occasional natural flooding, and that of a clogged condition of a natural water course, and the defendant's clarifying instruction was refused by the court. There was here no evidence of flooding onto plaintiff's property before the tile drain deteriorated. In Homm v. Oakes, 453 S.W.2d 679 (Mo. App.1970), there was evidence of two separate accidents with two distinct injuries flowing therefrom. These cases are for the reasons noted distinguishable, and Point I is overruled.

The City makes three attacks on Instruction No. 2, which is: "Your verdict must be for plaintiff, if you believe: First, plaintiff owns the building at 2826, 2828 and 2830 McGee, Kansas City, Missouri, and Second, the normal flow of surface water at the Union Cemetery was diverted, and Third, defendant permitted deterioration of its tile drain in close proximity to plaintiff's building, and Fourth, water collected on defendant's property and was discharged in or on plaintiff's land in an unnatural volume, and Fifth, such use by defendant of its property was unreasonable, and Sixth, as a direct result of such conduct, the plaintiff sustained damages. (MAI 22.06 Modified to non-intentional nuisance. * * *)."

■ It is first said that Instruction No. 2 failed to hypothesize and require the jury to find that the *City* collected surface waters onto plaintiff's property at only one point. The instruction fairly read permitted the jury to find that surface water was diverted (by reason of deterioration of the tile drain and the ditch or trench under it) by reason of which water collected in the shallow area behind plaintiff's building, and was discharged in unnatural or increased volume thereon. This is plaintiff's theory, and it is supported by the evidence. If the tile drain area had not been permitted by the City to deteriorate, the water would not have collected in the flat area

of the cemetery behind plaintiff's building, but would have run on out through it to McGee Trafficway to the east. Geiger, supra. Unquestionably, Instruction No. 2 hypothesizes and authorizes the finding, that the City, by reason of its maintenance of a nuisance, collected surface water. The deterioration of the tile drain constitutes the nuisance, as the jury could find. Rodgers v. Kansas City, 327 S.W.2d 478, 482[2] (Mo.App. 1959). Instruction No. 2 refers only to surface water, and no other kind, so there is no merit in the City's contention that the instruction failed to require the jury to find that "only surface waters" were collected by the City. As to the third contention that the instruction failed to hypothesize that the City acted "negligently", the answer is that nuisance and negligence are different kinds of torts. "A 'nuisance' does not rest *on the degree of care used, but on the degree of danger existing* with the best of care." Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485, 489 (1932). Cf. Kelley v. National Lead Co., 240 Mo. App. 47, 210 S.W.2d 728, 735[11], (1948); Clark, et al. v. City of Springfield, 241 S. W.2d 100, 106 (Mo.App.1951). Point II is overruled.

■ The City also contends that plaintiff's damages resulted from an unprecedented heavy rainfall which constitutes an act of God for which it is not liable. It says that there was no evidence that its negligence (really, maintenance of a nuisance) concurred with Acts Vis Major to cause damage to plaintiff's property. Although there was evidence from Defendant's Exhibit B, a letter written by plaintiff to his tenant in which he stated that the rainfall was an act of God and for her not to worry, in his testimony, plaintiff categorically denied that the rainfall constituted an act of God. It is thus not conclusively admitted by him that the rains were so extraordinary that the causation of his damages were solely the result of an act of God. The question was for the jury to consider in view of the fact that there

was no evidence of prior flooding of plaintiff's building, and the testimony of meteorologist Pearson. That was that in June, 1969, rainfall measured 10.57 inches, which exceeded the average of 4.92 inches; in July, 1969, the rainfall was 10.29 inches, exceeding the average for that month by 3.97 inches; these being the wettest months on record; but that there had been no flash flood, in June or July, 1969, and in June, 1969, there were no rains of as much as an inch per hour; in July, 1969, there were only three hours during which the rain was as much as an inch per hour; and these two months had great rain frequency. As against that testimony, the City's engineer witness, Ronald Miller, testified that if the drain tile was in good condition it was adequate to carry the surface water from the rains of June and July, 1969, from the 1.37 acre water shed immediately to the west of plaintiff's building, and the half acre water shed to its south. It is obvious that the jury could find from this evidence that the conduct of the City in failing to maintain the drain tile in good condition concurred with the heavy rains, and there was no sole cause of an act of God in producing plaintiff's damages. Gulath v. City of St. Louis, 179 Mo. 38, 77 S.W. 744, 748 (1903); Geiger, supra; and see Missouri Pacific Railroad Company v. Terrell, 410 S.W.2d 356 (Mo. App.1966), defining "An act of God 'is an event in nature so extraordinary that the history of climatic variations in the locality affords no reasonable warning of their coming.' Corrington v. Kalicak, Mo.App., 319 S.W.2d 888, 892(3)." The jury has resolved the question of whether the amount of rain constituted an act of God, and whether those rains combined with the maintenance of a nuisance by the City to produce the damage. Point III is overruled.

■ Plaintiff's counsel argued to the jury: "Now, gentlemen of the jury, everyone has the duty to maintain its property. If you didn't maintain your property, the City would probably fine you or charge

you with failing to maintain that property." [The objection, and motions to discharge the jury and to instruct it to disregard the argument were overruled.] "As I was saying, gentlemen, if you did not keep your property in a good state of repair, I'm sure the City would have you down in front of the municipal judge wanting to know why. The City is no different than any other landowner. If you are maintaining your house in a dilapidated condition so the shingles are falling off and the walls are caving in and it falls on your neighbor's property, that is an unreasonable use of your property. And this case is no different. The City had a duty to maintain that drain so it wouldn't discharge on Mr. Genova's premises. * * *." There is not here an element of improper argument that the jury identify themselves with plaintiff which was condemned in Fisher v. Williams, 327 S.W.2d 256 (Mo.1959). The argument related only to the reciprocal duties of landowners on the issue of the City's liability. Compare the discussion of argument in Chaffin v. Kansas City, 230 Mo.App. 434, 92 S.W.2d 917, 920, et seq. (1936). No abuse of the trial court's discretion in permitting the argument is demonstrated. Point IV is overruled.

The judgment is affirmed.

All concur.