GREENE, Judge.
Plaintiff filed suit seeking recovery of demurrages which accrued on its railroad cars consigned to defendant. From judgment granting plaintiff the amount sued for, defendant appeals.
The record establishes that the demurrag-es sought by plaintiff accumulated on cars consigned to defendant from Novemher 24, 1973 to March 26, 1975. Defendant had' been receiving materials shipped in plaintiff’s cars for use in its business since it started operations in 1973. Actually, the *841 principals operating defendant corporation did similar business with plaintiff from 1959 to 1965 under another .corporate name.
Plaintiff delivered cars to defendant’s spur track and gave defendant two days free time to unload each car. This free time commenced running at 7:00 a. m. in the morning after the car was placed on defendant’s spur for unloading. A per diem demurrage was charged defendant after the lapse of these two free days. This demurrage procedure was applied in accordance with Freight Tariff 4-J promulgated under the Interstate Commerce Act. 49 U.S.C.A. § 1 et seq. Both parties agree that Freight Tariff 4-J applies to their contractual relationship.
Defendant claims it is entitled to a reduction of these demurrages due to delays in unloading caused by rain, bunching of cars by plaintiff and run-arounds. Bunching occurs when plaintiff accumulates ears and delivers them to defendant all at one time instead of properly delivering one ear per day. The term run-arounds refers to the situation in which a recently tendered car is placed for unloading in front of a car previously tendered.
Freight Tariff 4-J requires defendant consignee to request credit for all demur-rage caused by bunching and rain delay in writing within thirty days of the occurrence. Credit for run-arounds could be obtained by defendant giving oral notice of such to plaintiff. There was no time requirement in giving this oral notice.
Appellant claims that plaintiff is es-topped in demanding and has waived its right to demand strict adherence to this tariff by its actions. The record establishes and the lower court found that plaintiff accepted notification of credit due after this thirty-day period. Plaintiff allowed defendant to write its request for credit for bunching and rain delays on the face of the freight bill and acquiesced in receiving many of these requests for credit long after the lapse of the thirty-day time limit.
Plaintiff claims that no act or omission on its part can estop it from enforcing the applicable provisions of the tariff, and it can not waive enforcement of these provisions by its actions.
There is a strong public policy behind the regulations and fees found in these freight tariffs which can be achieved only by the full implementation of these tariffs. The public policy sought to be achieved by these tariffs is the avoidance of any preference or discrimination in rates charged for the carriage of goods by common carriers such as plaintiff. Atchison, Topeka and Santa Fe Railway Co. v. Bouziden, 307 F.2d 230 (10th Cir. 1962); Colorado and Southern Railway Company v. Southwestern Roofing & Sheet Metal Company, 374 F.Supp. 24 (W.D.Okl.1974); St. Louis, Southwestern Railway Co. v. Mays, 177 F.Supp. 182 (E.D.Ark.1959); Chicago B. & Q. R. Co. v. Blunk, 101 F.Supp. 219 (S.D.Iowa 1951). This public policy affects demurrage, as seen in St. Louis, Southwestern Railway Co. v. Mays, supra, where the court stated:
“In the application of the rule that carriers, shippers and consignees are bound by the provisions of the tariffs filed by the former, it is now well settled that where, as here, demurrage charges are prescribed by tariff, and where a liability for such charges accrues, the carrier is under a duty to collect and the shipper or consignee is under a duty to pay the same. They have no choice in the matter, and it is not a legitimate subject for compromise or settlement between them. (Citations omitted). Were the law otherwise, waivers and adjustments of demurrage claims would be ready means for the effectuation of prohibited preferences, discriminations and rebates.” 177 F.Supp. at 184.
Against this line of cases mandating a strict application of freight tariff charges, appellant cites to us another line of federal jurisprudence in which tariff charges were not imposed because to do so would have been unfair or inequitable. See Davis v. Akron Feed & Milling Co., 296 F. 675 (6th Cir. 1924); Cincinnati Northern R. Co. v. Beveridge, 8 F.2d 372 (E.D.Va.1925); Missouri Pacific Railroad Company v. National Milling Company, 276 F.Supp. 367 (D.N.J. *842 1967); Farrell Lines Incorporated v. Titan Industrial Corporation, 306 F.Supp. 1348 (S.D.N.Y.1969); and Consolidated Freightways Corporation of Delaware v. Admiral Corporation, 442 F.2d 56 (7th Cir. 1971). These cases are inapposite to the matter before this Court because in each of these cases the defendant already had been misled into paying someone the amounts required by the tariffs and the issue was whether these defendants should have to pay this amount again. The public policy concerning preferences had been satisfied in these cases. The present case involves amounts required of appellant by the tariffs that have not yet been paid by it. Accordingly, the defenses of estoppel and waiver are not available in this case to appellant.
Appellant also claims that the lower court erred in not granting it credit for run-arounds. The trial court found that appellant had been granted all the credit for run-arounds to which it was entitled. After a close examination and review of the entire record we are unable to find any error made by the trial court in determining that appellant received all the credit due for run-arounds.
The judgment is affirmed at appellant’s cost.
AFFIRMED.