**ILLINOIS CENTRAL RAILROAD COMPANY, Plaintiff-Appellee Cross-Appellant,**

**v.**

**TEXAS EASTERN TRANSMISSION CORPORATION, Defendant-Appellant Cross-Appellee.**

**No. 74–3061.**

United States Court of Appeals, Fifth Circuit.

June 11, 1976.

Hume Cofer, Shirley Meissner, Austin, Tex., William A. Brown, Houston, Tex., for defendant-appellant cross-appellee.

John A. MacDonald, Jr., Houston, Tex., for plaintiff-appellee cross-appellant.

Before WISDOM, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Defendant, Texas Eastern Transmission Corporation, appeals from an adverse judgment concerning demurrage rates charged for detention of railroad cars of plaintiff-carrier. The issue turns on whether the demurrage charge should have been calculated under the rate in effect when goods were shipped, or under a new rate in effect when the railroad cars reached their destination after which they were detained. The railroad company cross-appeals a denial of prejudgment interest. We affirm the holding that the new rate effective after the date of shipment controls, and the denial of prejudgment interest.

During the period from April 21–28 of 1969, 264 carloads of pipes were shipped for the defendant from California to Mississippi. The shipments arrived at destination between April 30 and May 8, 1969. They were unloaded May 5 through May 20. An Interstate Commerce Commission order increased the demurrage rate effective May 1, 1969. The district court by a jury verdict awarded plaintiff-railroad $14,485 based on the increased demurrage rate. The amount under the old rate applicable when the shipment commenced would have been $8,030.

The demurrage rate in effect on the shipment date was $5.00 for each of the first four chargeable days, $10.00 for each of the next four days and $15.00 for each subsequent day. On April 16, 1969, the ICC issued Revised Service Order No. 1023 with an effective date of May 1, 1969, prior to the detention of the railcars, which increased the demurrage rate to $5.00, $25.00 and $50.00, respectively. The ICC order was promulgated as an emergency attempt to overcome an acute lack of available railroad cars for public use. The issue to be decided is which demurrage rate should apply to the defendant-shipper's detention of plaintiff's railroad cars.

Resolution of the issue turns on whether the charges are for use of the equipment in transportation, or for use of the equipment in storage after the transportation purpose had been completed. If for use of the equipment in transportation, the shipper is entitled to be charged only that rate applicable at the time of shipment. If for use of the equipment as storage, the railroad is entitled to the rate applicable at the time of the storage.

Although *Western Oil & Fuel Co. v. Great Lakes Pipe Line Co.,* 210 F.2d 490 (8th Cir. 1954), involves storage facilities other than railroad cars, it provides some guidance. Shipments of oil were there involved and it was impossible for the oil to be delivered to or by the carrier without the oil first going into the carrier's storage facilities at both point of origin and destination. The ICC promulgated a series of tariffs which reduced the free time that oil could remain in the storage facilities from 90 to 60 and then to 30 days. The case involved whether to allow the free time provided by the tariff at the time of the shipment's origin, or the reduced free time provided in the tariff which went into effect after the shipments had been delivered to the carrier but before final delivery and removal of the oil by the consignees. The court held that the longer free time period was not subject to change after the shipment was commenced.

The *Western Oil* court based its decision on whether the free time was part of transportation, for which a transportation rate was paid, or whether it was a storage privilege and not a necessary incident to actual transportation. The court said:

It must be conceded that if this "free time" period is a necessary incident to the transportation service for which the transportation rate was paid, it could not be withdrawn, changed, or modified after the contract of carriage was made by delivery of the shipments to the carrier. It must likewise be conceded that if the

free time period is a storage privilege, such a service or privilege is not a necessary incident to the actual transportation service for which the transportation rate was paid and may be changed or withdrawn by Tariff 172 after the shipments began.

210 F.2d at 493.

The Fourth Circuit applied similar reasoning in an earlier case on applying a new tariff when it held that a:

. . . freight rate in effect when a shipment is delivered to the carrier cannot be changed as against that shipment, the charge for optional storage at destination, when the transportation has been completed, may be lawfully increased, or the free time curtailed, upon and after the statutory notice.

*Chesapeake & Ohio Coal & Coke Co. v. Toledo & O. C. Ry.,* 245 F. 917, 919 (4th Cir. 1917), *dismissed for want of jurisdiction,* 249 U.S. 585, 39 S.Ct. 289, 63 L.Ed. 788 (1919) (per curiam).

There is little doubt that the ICC, in promulgating the change of rate here, regarded the detention of cars beyond the free period of two days, which was not changed, as not a necessary part of transportation, and therefore equivalent to storage. Certainly the demurrage was not part of the rate charged for transportation since it was separately computed as a distinctive item of charge.

■ The subject of demurrage is, in general, governed by the Uniform Demurrage Code, which was adopted in 1909 by the National Convention of Railway Commissioners and was approved by the ICC and ordered by that body to be put into effect throughout the country. *See Swift & Co. v. Hocking Valley Ry.,* 243 U.S. 281, 283, 37 S.Ct. 287, 288, 61 L.Ed. 722, 723 (1917). Demurrage charges have a dual purpose: one, to secure compensation for use of cars and the tracks they occupy, and second, to permit efficiency by providing a deterrent against undue detention of railroad cars. *Turner, Dennis & Lowry Lumber Co. v. Chicago, M. & St. P. Ry.,* 271 U.S. 259, 262, 46 S.Ct. 530, 531, 70 L.Ed. 934, 938 (1926);

*Pennsylvania R. R. Co. v. Kittanning Iron & Steel Mfg. Co.,* 253 U.S. 319, 323, 40 S.Ct. 532, 533, 64 L.Ed. 928, 930 (1920).

■ To the extent a charge is for use of the cars for some amount of necessary unloading time at destination, only the first purpose of demurrage is involved, which is to secure compensation for use of the equipment. The charge for detention and use of the cars for storage after the shipment has reached a destination involves the second purpose of providing a deterrent against undue detention and to promote efficient car use.

Clearly Service Order No. 1023 was promulgated to achieve the second purpose of promoting greater efficiency of railcar use. The Order recites that there is an acute shortage of freight cars throughout the country to the point that "an emergency exists requiring immediate action to promote car service in the interest of the public and the commerce of the people."

*It appearing,* That there are acute shortages of freight cars throughout the country; that certain carriers are unable to furnish an adequate supply of freight cars to shippers located on their lines; that these shortages of freight cars are impeding the movement of many commodities; that many freight cars are held by shippers for loading, unloading, or instructions for movement, in excess of the free time periods established by the applicable demurrage and detention tariffs; that such practices immobilize large numbers of freight cars needed by shippers for transportation of other freight; and that the existing demurrage and detention rules, regulations and practices of the railroads are ineffective with respect to the use, supply, control, movement, distribution, exchange, interchange and return of freight cars to meet the requirements of shippers. It is the opinion of the Commission that an emergency exists requiring immediate action to promote car service in the interest of the public and the commerce of the people accordingly, the Commission finds that that notice and public procedure are im-

practicable and contrary to the public interest, and that good cause exists for making this order effective upon less than thirty days notice.

*ICC Rev. Service Order No.* 1023 (1969).

The clear intent of the Revised Service Order was to exact an immediate and higher penalty for the detention of railroad cars beyond the free time permitted for loading and unloading. This Court has previously upheld the power of the Interstate Commerce Commission to meet such an emergency with increased demurrage rates. *Armour & Co. v. Louisiana S. Ry.,* 190 F.2d 925, 928 (5th Cir. 1951), *cert. denied,* 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952). *See ICC v. Oregon Pacific Indus., Inc.,* 420 U.S. 184, 95 S.Ct. 909, 43 L.Ed.2d 121 (1975).

We have noted defendant's argument that the contract provided for "tariffs in effect on the date of the issue of this Bill of Lading" and that the ICC showed no intention of interfering with existing contracts because the Order provided that it "would become effective" on May 1, 1969, after the execution of the Bill of Lading. The argument begs the question of whether the car detention was part of the transportation covered by the Bill of Lading and overlooks the purpose of the ICC in promulgating the Order to overcome an emergency situation as soon as possible. We find no error in the district court's resolution in the railroad's favor of the dispute as to whether the use after free time was for unloading or storage.

 Illinois Central cross-appeals from a denial of prejudgment interest on the amount of demurrage recovered. Generally, interest is awarded from the date of judgment and the rate is determined by reference to the applicable state law. 28 U.S.C.A. § 1961. Penalties do not draw interest, but judgments for penalties do. *United States v. West Texas Cottonoil Co.,* 155 F.2d 463, 466–467 (5th Cir. 1946). Demurrage is part compensation and part penalty to secure the release of equipment and tracks. *See, e. g., Turner, Dennis & Lowry Lumber Co. v. Chicago, M. & St. P. Ry.,* supra; *Iversen v. United States,* 63 F.Supp.

1001, 1005 (D.D.C.), *aff'd,* 327 U.S. 767, 66 S.Ct. 825, 90 L.Ed. 998 (1946) (per curiam). In the instant case, demurrage was exacted to secure the release of plaintiff's railroad cars during a 60 day emergency in 1969, consequently, the charge is fairly a penalty. There was no error on the facts of this case in refusing to award prejudgment interest.

AFFIRMED.