O’Toole, J.
The plaintiff, a railroad, sued the defendant for certain charges incurred in the transportation and delivery of freight to the defendant. The complaint contained eight counts, each based on an account annexed, stating a waybill number and date, a rail car number and the amount claimed to be due.
The defendant’s answer was that it was not indebted to plaintiff, that the charges were purported to be for demurrage charges, and that the defendant had always picked up its cars upon notice of arrival. Defendant further answered that if the cars were not picked up upon arrival it was due to lack of proper notice to it and that it should not be held accountable for negligence on the plaintiff s part in giving the required notice.
The defendant amended its answer to the original complaint by making it applicable to detention as well as demurrage charges, by setting up the three-year Statute of Limitations for collection of the charges and by alleging that the charges were not made in accordance with tariffs as regulated by the Interstate Commerce Commission.
In a second amendment to its answer to all of the counts in the plaintiff’s complaint, as amended, the defendant added the defense of payment of all the charges.
The Court found for the plaintiff on the first count in the sum of $451.08 and interest from date of demand, June 16, 1976; on Count 2 in the sum of $403.56 plus interest from June 15,1976, date of demand; on Count 3 in the sum of $70.00 together with interest from October 20,1976, date of demand; on Count 4 in the sum of $371.97 together with interest from October 11,1977, the date of demand; on Count 5 in the sum of $299.83 together with interest from April 7,1977, date of demand; on Count 6 in the sum of$2,101.56 together with interest; on Count 7 in the sum of $674.19 together with interest; and on Count 8 in the sum of $200.00 together with interest.
At the trial, the defendant objected to the introduction by the plaintiff of certain exhibits, contending that they were not properly admissible as regular business entries under G.L.c. 233, §78. The defendant duly claimed a report of the judge’s ruling admitting the records and now appeals that ruling. The defendant also appeals from the denial of certain of its requests for rulings of law at the *211 conclusion of the evidence.
On this appeal, both parties submitted briefs. The plaintiff only appeared at oral argument.
At the trial, there was evidence tending to show the following:
From June 1976 through July 1979, the plaintiff (“Conrail”) provided rail transportation services to the defendant (“Commonwealth”) as consignee of certain produce. In connection with these services, Conrail assessed demurrage and detention charges on railroad cars. Demurrage and detention charges are freight charges assessed against a consignee or responsible party for retaining a car beyond a certain amount of “free time” accorded under applicable ICC tariffs.
The charges incurred by Commonwealth totaled $4,502.19 for twenty-three (23) cars. There was no evidence presented by the defendant that it did not receive or accept the goods consigned to it. These charges were established through the introduction of twenty-three (23) waybills and monthly audit statements. (Exhibits 4A, B-26A,B.) A waybill is the document which travels with the car and on which is recorded the information for purposes of assessing freight charges. A monthly audit statement is a computerized statement of all information concerning the movement of the car including the number of the car, its contents, the time of arrival, if and when notice is given to the consignee, the date and time the car is ordered by the consignee, the date and time the car was placed or made available for the consignee and the date and time the car was released or made available to the railroad. The audit statements contain notations of the date and time actual notice was given to the consignee. All information on the monthly audit statement is first recorded by the railroad by a system known as Demurrage Industrial Car Control System (“DICCS”) and then transferred to the audit statement. The DICCS cards are destroyed in the ordinary course, but the monthly audit statements are kept by Conrail as a permanent record.
The Court allowed the introduction of these waybills and audit statements in evidence as business records over the objection of the defendant. The defendant immediately claimed a report as follows:
Defendant claims report on basis that waybills and audit statements are not ordinary business records, but were compiled for purposes of collection or litigation, that the underlying documents have been destroyed ei [sic] - dices cards; these documents fail to have evidential value as to the particular charges claimed in this suit; that all of the claimed counts or claim cars have no waybill or information identifying the claimed amount.
Delivery of the cars in question was made to a track used by Commonwealth for receipt of railroad cars containing produce. A notation on the monthly audit demurrage statement designated as “PT”, indicated that all twenty-three (23) cars were delivered to a private track, i.e. an ‘ ‘other than public delivery track.” Placement of a car on a private track completes the contract of carriage and constitutes delivery. Pursuant to ICC Tariff 4-J, Rule 4, sec. C (Exhibit 1 in evidence), “delivery of cars upon an other than public delivery track... will constitute notification to the consignee. ” An employee of the defendant testified from the audit statements introduced in evidence that the track in question was a public delivery track, that everyone used the track and that in his opinion the track in question was owned by the New Haven Railroad or its successors. ICC Tariff 4-J, Rule 4, sec. A (Exhibit 1) provides that upon arrival of a car the railroad agent must give notice to the consignee exclusive of Saturdays, Sundays *212 and Holidays after the arrival of the car. Note 1 of Rule 4 states that “Notice must be in writing if the consignee or party entitled to receive same shall file in writing a request to receive such form of notice prior to arrival of car or cars.” The defendant had not been requested to be notified in writing of the arrival of its cars. Telephone notice of arrival of the cars was also given to the defendant.
At the close of the trial and before final arguments, the defendant submitted various requests for ruling of law. Some were denied by the judge, and the defendant requested the report of the denials. The specific requests excepted to and the judge’s rulings on them are set forth below in part B of this opinion.
The Court made the following Findings of Fact:
This is an action brought by Consolidated Rail Corporation, an agent for the Trustees of the Penn Central Transportation Co., against Commonwealth Fruit and Produce Co., for detention and demurrage charges arising from the deliveiy of railroad cars to the defendant.
The plaintiff s witness, Donald P. Finnegan, testified that he has worked in the railroad industry for 30 years and for the past 20 years has had experience in railroad interchange accounts, overcharges, ICC tariffs and freight claims. He is presently the supervisor of demurrage litigation and has control of all records pertaining to demurrage charges for the plaintiff. The witness further testified that he has been qualified as an expert in demurrage charges and ICC tariff rates in other courts in the Commonwealth.
Mr. Finnegan testified that the original copy of a bill of lading constitutes the contract of carriage between the shipper and the carrier. It is this copy which contains the contractual terms and conditions between the two parties. The second copy of the bill of lading is kept by the carrier and is their receipt for the contract of carriage. The third copy constitutes a memorandum of the shipment which is kept by the shipper for his records. A waybill is prepared by the agent of the railroad from the second copy of the bill of lading. It is the waybill which physically moves with the items in shipment. A waybill contains all the information that a bill of lading has except the terms of the contract.
Mr. Finnegan further testifed that in the usual course of business, information relating to the arrival, placement, and release of shipments is recorded by the railroad by a system known as Demurrage Industrial Car Control System (DICCS). DICCS cards are processed and the information is stored on magnetic tapes. The DICCS cards are kept for an undetermined period of time and later destroyed. The monthly demurrage audit statements are produced from the information contained on the magnetic tapes. Monthly audit statements indicate the particular number of the railroad car, the content of the car, the arrival time, if and when notice was given to the consignee, the date and time ordered, the date and time the shipment was placed, and the date and time the shipment was released. Finnegan stated that monthly audit statements also indicate when'and for what shipments actual notice was given to the consignee.
I find from the testimony of Mr. Finnegan that the plaintiffs waybills and monthly demurrage audit statements introduced in evidence were kept in good faith and in the regular course of the railroad’s business. Furthermore, these documents, although photocopies, are what are now available as business records. I find that the waybills and monthly *213 demurrage audit statements introduced to support the 23 bills the plaintiff seeks to collect (Exhibit 2) were kept for the purpose of collecting these charges and not for litigation.
In addition, I find that the railroad car numbers as found on the 23 waybills introduced in evidence can be correlated to the monthly demurrage audit statements which were also in evidence. Thus, for each shipment in question the plaintiff has provided an 'audit trail’ from the waybills to the monthly demurrage audit statements. There was no evidence presented by the defendant that it did not receive or accept the goods consigned to it.
The defendant claims that the plaintiff failed to notify it in writing of the availability of the cars for unloading. Mr. Franklin Daniels, a witness for the defendant, testified that the track in question 'was owned by New Haven or its successors and that everyone used it.’ This testimony, argues the defendant, would indicate that the railroad cars were placed on a public delivery track and not on a private track. The testimony of Mr. Finnegan pointed to records of the railroad company which demonstrate that deliveries were made to a private track and that it was the custom to give telephone notice to the defendant of the arrival of shipments.
Defendant did not produce written requests for notification pursuant to Section A of Rule 5 of Tariff 4-J. Based on the credible evidence presented I find that plaintiff made deliveries to other than public delivery tracks and that the items shipped were constructively placed with the defendant.
I find from examining the evidence that eight statements indicate shipments were made to private tracks (PT) with actual notice given to the defendant. I find that the remaining twelve audit statements in evidence indicate deliveries to private tracks (PT) but no actual notice was given to defendant of delivery. ICC Tariff 4-J, Rule 4, sec. A (Exhibit 1) provides that upon arrival of a car the railroad agent must give notice to the consignee exclusive of Saturdays, Sundays and Holidays after the arrival of the car. Note 1 of Rule 4 states that ‘Notice must be in writing if the consignee or party entitled to receive same shall file in writing a request to receive such form of notice prior to arrival of car or cars.’ [Emphasis added] (at page 65 of Tariff 4-J, Rule 4).
For the above reasons, the plaintiff has proven by the fair preponderance of the credible evidence that it is owed the amounts alleged in its amended complaint along with prejudgment interest.
A. Evidentiary Ruling
The defendant challenges the trial judge’s overruling of its objection to the admission in evidence of the waybills and monthly audit statements under G.L.c. 233, §78. From the defendant’s claim of report, it appears that the grounds of its objection were (1) that the exhibits were not ordinary business records, (2) that they were “compiled for purposes of collection or litigation,” and (3) that the records contained information taken from other records. Each ground is without merit.
As to the first, the judge specifically found, on the basis of the testimony of a witness familiar with the plaintiffs record-keeping procedures, that the records were kept in good faith and in the regular course of the plaintiff s business. The reported evidence clearly supports this finding.
*214 The finding that the records were made in good faith and in the regular course of business also implicitly defeats the defendant’s contention that the records were compiled for litigation. While there is no specific finding that the records were prepared prior to the present litigation, this was unnecessary in light of the testimony that the documents themselves were generated contemporaneously with the events recorded or within a reasonable time thereafter. The defendant points to no evidence to the contrary.
Finally, it is not a basis for objection to the admission of business records that they summarize or otherwise contain information contained in other regularly kept business records. Saba v. Cohen, 333 Mass. 557, 558-59 (1956); Wingate v. Emery Air Freight Corp., 385 Mass. 402, 406 (1982).
The testimony of the plaintiffs witness established that to the extent that the waybills and monthly audit statements incorporated information from other documents, the predecessor documents themselves qualified as reliable regular business entries.
There was no error in the admission of the objected-to Exhibits.
B. Requests for Rulings
The following requests for rulings by the defendant were denied as indicated. For the reasons set forth below there was no error in the denial of the requests.
Request No. 2: The complaint, as amended several times by plaintiff, has reference to and-is based upon various waybills. Waybills are not contracts and plaintiff is not entitled to recover on counts annexed which incorporate waybills unless the underlying contract of affreightment is in evidence.
Ruling: Denied in part and allowed in part. Waybills are not contracts. However, defendant’s request for ruling of law assumes that the plaintiffs suit is solely based on waybills. The assumption is factually incorrect. Plaintiff has relied on waybills and other business records. (Exhibit 4A, 4B) to demonstrate defendant’s liability for the demurrage charges. One who accepts goods consigned to him is liable for all freight charges properly due under the applicable tariffs. Pittsburgh C.C. & St. L. Ry. v. Fink, 250 U.S. 577 (1919). There has beenno evidence presented by the defendant that it did not receive or accept the goods consigned to it.
This request misconstrued the nature of the plaintiffs claim. As the judge correctly ruled, the plaintiff did not allege that the waybills constituted contracts with the defendant. Rather, the waybills, as well as the monthly audit statements, were evidence of the time and place of delivery of freight to the defendant. The plaintiffs claim was based on demurrage charges established by applicable tariffs, which were before the trial judge. Upon the evidence before him, the judge could properly have concluded that the defendant received and accepted the goods consigned to it. In such case, the defendant’s liability for the charges arose under the tariffs and not under any private contract with the carrier.
The judge’s ruling was correct.
Request No. 4: Since the plaintiff failed to notify defendant of the availability of the cars for unloading, or caused its facilities to be closed so that defendant could not reach the cars to unload them, the plaintiff is not entitled to recover.
Ruling: Denied.
This request was inapplicable to the facts as found by the trial judge and thus *215 properly denied. The judge found that under the applicable tariff (quoted in his findings), the plaintiff was not required to notify the defendant of the arrival of the cars in the absence of a written request by the defendant for such notice. No such reqüest was made by the defendant. Accordingly, the failure of the plaintiff to notify the defendant was of no consequence to the rights of the parties.
Request No. 5: The plaintiff has incorrectly assessed the demurrage and detention charges by including therein charges for Saturdays, Sundays and Holidays which occurred prior to the second chargeable day under the tariffs.
Ruling: Denied.
The defendant has not, in its brief, pointed to any evidence or law in support of the requested ruling. The issue not having been argued in its brief, the exception is deemed waived. Dist./Mun. Cts. R. Civ. P., Rule 64(f).
Request No. 6: The tariff rule requiring the plaintiff to notify the defendant in writing of the constructive placement of cars consigned to it must be strictly complied with by the plaintiff in order for it to recover demurrage or detention.
Illinois Central Railroad Co. v. Ready Mix Concrete Inc., 323 F. Supp. 609, 611 (1971 USDC ED La.)
Ruling: Denied.
Request No. 7: The plaintiff has failed to sust.ain its burden of proving that it strictly complied with tariff rule by sending defendant written constructive placement notices.
Ruling: Denied.
As noted above, the trial judge found that, because the defendant had not requested written notice of the availability of cars for unloading, there was no obligation on the part of the plaintiff to provide written notice. This was a correct construction of the tariff. The case cited by the defendant is inapplicable to the facts found by the judge. Accordingly, these requests were properly denied.
Request No. 8: Since the demurrage and detention charges are penalty charges, no interest can be recovered on them.
Illinois Central Railroad Co. v. Texas Eastern Transmission Co., 533 F. 2d 272, 275.
Ruling: Denied. The defendant was careless in citing Illinois Central Railroad Co. v. Texas Eastern Transmission Co., 533 F. 2d 272, 275 (5th Cir. 1976) for the proposition that prejudgment interest cannot be collected by the plaintiff. This part of the case was reversed at 551 F. 2d 943, 945 (5th Cir. 1977). See also Southern Pacific Co. v. Miller Abattoir Co., 454 F. 2d 357, 362 (3rd Cir. 1972).
The trial judge’s ruling was correct for the reason stated. The defendant has cited no other authority for the proposition set forth in its request.
Request No. 10: That the plaintiff has not sustained its burden of proof.
Ruling: Denied.
This request calls for an assessment of the evidence and is thus a request for a finding of fact. No ruling on it was required. Alternatively, it could arguably be construed as a request for a ruling that a finding for the defendant was required. So construed, it was properly denied.
Request No. 11: That the plaintiff has not presented any real evidence in each count of the date and time of the arrival of the cars, the date and time of placement of each car, the time of notice to the defendant and to whom notice was given or the time of release, *216 which, under the freight tariff rules in effect, is material to sustain the plaintiffs claim for the alleged charges.
Ruling: Denied.
Request No. 12: That computer sheets compiled from second and third hand information and containing miscellaneous information not pertinent to the specific claims against the defendant are inadmissible to support the plaintiffs claim.
Ruling: Denied.
Request No. 13: That the only record that is admissible to sustain the plaintiffs claim is the original entry, kept in the regular course of business at the local railroad yard where the cars arrive, showing arrival, placement, notice and release of cars, provided that it is a true record.
Ruling: Denied.
These requests challenge the admission in evidence of the waybills and monthly audit statements. For the reasons set forth in part A of this opinion, above, they were properly denied.
Once admitted, the exhibits were evidence for all purposes of the matters contained in them. They were subject to evaluation by the trial judge in the light of all the evidence in the case. The trialjudge’s findings based on the exhibits will not be disturbed if they can be supported on any reasonable view of the evidence. Buckley v. Railway Express Agency, Inc., 323 Mass. 448, 451 (1948). The judge’s findings were clearly supported by the “audit trail” incorporated in the exhibits and explained by the plaintiffs witness.
No error appears, and the report ought to be, and hereby is, dismissed.