CSX TRANSPORTATION, INC., Plaintiff,

v.

The CITY OF PENSACOLA, FLORIDA
d/b/a The Port of Pensacola,
Defendant.

No. 94–30236–RV.

United States District Court,
N.D. Florida,
Pensacola Division.

Oct. 17, 1995.

---

Larry Hill, Moore, Hill & Westmoreland, Pensacola, FL, for CSX Transportation Corp.

Don J. Caton, City of Pensacola, Office of the City Attorney, Pensacola, FL, Stephen C. Herman, Pro Hac Vice, Belnap, Spencer, McFarland & Herman, Chicago, IL, for City of Pensacola.

Danny L. Kepner, Shell, Fleming, Davis & Menge, Pensacola, FL, for ADM Milling Co.

O'Gwen L. King, King & Dessommes, Pensacola, FL, for Lauhoff Grain Company.

## ORDER

VINSON, District Judge.

Pending are the motions of plaintiff CSX Transportation, Inc. for leave to file an amended and supplemented complaint (doc. 40) and for reconsideration of this Court's orders of January 5, 1995, and June 30, 1995 (doc. 41).

CSX originally filed a three-count complaint in this case, seeking to recover demurrage for railcars either actually or constructively delivered to the Port. Count I sought demurrage under CSX's published tariff. Count II sought to recover damages on a quantum meruit theory, and Count III sought the same relief on a quasi-contract theory. Because I concluded that the "filed rate doctrine" precluded a common carrier from recovering demurrage except pursuant to its published tariff, Counts II and III were dismissed by my order of January 5, 1995. My later order of June 30, 1995, also dismissed Count I because, as a nonparty to the contracts for transportation of goods, the Port cannot be held directly liable for demurrage under CSX's filed tariff. In that order, however, I specifically retained jurisdiction for 60 days to consider other motions or claims by the plaintiff and over the pending mediation which I had ordered for the parties. CSX now seeks to amend its complaint to add new contract claims against the Port and to add new defendants. CSX also seeks reconsideration of the orders dismissing the three counts of its complaint.

### A. *Leave to Amend*

CSX has moved to amend its complaint to add several new counts against the port. Specifically, CSX now asserts: (1) a claim for demurrage based on the Port's direct contract with CSX; (2) a state law breach of contract claim based on enforceable promises made by the Port to pay demurrage; and (3) a third party beneficiary claim based on the Port's contract with its shippers to pay any demurrage incurred as a result of its negligence. CSX also seeks to add demurrage claims against ConAgra Flour Milling Company, ADM Milling Co., Cargill, Inc., and Lauhoff Grain Co. as consignees, consignors, or both, of the products CSX transported to the Port.

■ Rule 15(a), Federal Rules of Civil Procedure, provides that leave to amend "shall be freely given when justice so requires." Moreover, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962); *Hargett v. Valley Fed. Sav. Bank,* 60 F.3d 754, 761 (11th Cir.1995); *see also Halliburton & Assoc., Inc. v. Henderson, Few & Co.,* 774 F.2d 441, 443 (11th Cir.1985) (requiring a "substantial reason" to deny leave to amend).

■ In this case, the City of Pensacola (the "City" or the "Port") argues that the Court should deny CSX's request to file an amended complaint because the newly proffered claims lack merit, thereby making any amendment futile. Leave to amend should

be denied as futile when the complaint as amended is still subject to dismissal. *Halliburton, supra,* 774 F.2d at 444. If, however, the underlying facts relied on by the plaintiff provide a basis for relief, he should be afforded the opportunity to test his claims on the merits. *Foman, supra,* 371 U.S. at 182, 83 S.Ct. at 230; *Hargett, supra,* 60 F.3d at 761.

■ The City claims that CSX's two new contract theories lack merit because the Port, as a "care-of agent" and not a consignor or consignee, cannot become liable to a rail carrier for demurrage through a contract other than the bill of lading. However, the law is not so clear as that. Instead, it appears that contractual liability for demurrage is not only created through a bill of lading. In fact, "since persons liable for demurrage charges are to be determined by the ordinary rules of common law," those who are not parties to the bills of lading are free to assume contractual liability for demurrage charges. *See Middle Atlantic Conference v. United States,* 353 F.Supp. 1109, 1120–22 (D.D.C.1972) (three judge court); *see also Consolidated Rail Corp. v. Nevins–Petrillo Warehse. & Disb'n Sys., Inc.,* 619 F.Supp. 900, 901 (S.D.N.Y.1983) (corporation entered into contract to pay demurrage).

■ The City also contends that, as a matter of law, CSX could not have contracted with the Port for the payment of demurrage because the alleged contract does not comply with Section 208 of the Staggers Rail Act [49 U.S.C. § 10713]. Congress passed the Staggers Rail Act to remove the severe handicaps imposed on the railroad industry by government regulation. *Texas v. United States,* 730 F.2d 409, 412–13 (5th Cir.1984), *amended on other grounds, reh'g denied,* 749 F.2d 1144 (5th Cir.1985), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985). Consistent with the goal of deregulation, Congress specifically granted railroads the authority to enter into contracts to provide rail transportation services. Section 208 provides:

(a) One or more rail carriers providing transportation subject to the jurisdiction of the Interstate Commerce Commission ... may enter into a contract with one or more purchasers of rail service to provide specified services under specified rates and conditions. Such a rail carrier may not enter into a contract with purchasers of rail service except as provided in this section. (b)(1) Each contract entered into under this section shall be filed with the Commission ...

49 U.S.C. § 10713. This new authority to enter into contracts was intended to be "a significant aspect of the new freedom allowed to carriers to market rail transportation more effectively." *Texas v. United States, supra,* 730 F.2d at 413 (quoting H.Conf.Rep. No. 1430, 96th Cong., 2d Sess. 100).

■ The City's position is that the alleged contract in this case is invalid because it was not filed with the Interstate Commerce Commission ("I.C.C."). Apparently, no court has addressed whether Section 208 of the Staggers Rail Act applies to contracts for demurrage. However, Section 208 requires only that contracts for *rail service* be filed and approved by the I.C.C.; it says nothing about contracts to pay demurrage. When viewed in the context of Section 208, it is questionable whether the phrase "rail service" can be read so expansively as to cover demurrage. Further, it seems that the validity of contracts for the payment of demurrage has long been recognized. *See Pennsylvania R. Co. v. Kittaning Iron & Steel Mfg. Co.,* 253 U.S. 319, 321, 40 S.Ct. 532, 532, 64 L.Ed. 928, 929 (1920); *Consolidated Rail Corp. v. Nevins–Petrillo Warehse. & Disb'n Sys. Inc., supra,* 619 F.Supp. at 901; *Middle Atlantic Conference v. United States, supra,* 353 F.Supp. at 1121–22. If so, then contracts for the payment of demurrage were not forbidden by government regulation prior to the enactment of Section 208.[1] Because Section 208 was enacted to facilitate the deregulation of the railroad industry, and not to impose new regulatory requirements on railroads, it would appear to be inconsistent with that

1. Although the "filed rate doctrine" required CSX to file a tariff schedule with the I.C.C. and prohibited CSX from collecting demurrage at a different rate than stated in its filed tariff, I find

nothing in the "filed rate doctrine" which prohibits a rail carrier from contracting with additional parties to pay demurrage at the filed rate. *See* 49 U.S.C. §§ 10761(a)–10762(a)(1).

purpose to construe Section 208 as creating a new requirement for the filing of demurrage contracts.

■ The City also contends that CSX's third party beneficiary claim lacks merit because any alleged contract is preempted by the Federal Bill of Lading Act [49 U.S.C. § 80101, *et seq.*] and Title 49, United States Code, Section 10744. Absent explicit preemptive language, federal law does not preempt state law unless: "(1) the scheme of the federal law is so pervasive that the reasonable inference is that Congress left no room for the states to supplement it; (2) the field in which the federal law touches is one where the federal interest is so dominant that it will be assumed to preclude the enforcement of state laws on the same subject; or (3) the object that is sought to be obtained by the federal law and the character of the obligations by it reveal strong federal purpose." *Hester v. Int'l Union of Operating Engineers,* 941 F.2d 1574, 1582 (11th Cir. 1991). First, I note that neither of the federal statutes cited by the Port substantively address the subject of demurrage. Further, the Second Circuit has held that Title 49, United States Code, Section 10744 allows parties to allocate freight charges by contract, thus leaving "the initial determination of a party's liability for freight charges to express contractual agreement or implication of law." *In re Roll Form Products, Inc.,* 662 F.2d 150, 154 (2d Cir.1981) (quoting *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56, 62 (7th Cir.1971)). Thus, I cannot say at this point that CSX's third party beneficiary claim is preempted by federal law.

■ The City's assertion that CSX's third party beneficiary claim is barred by the statute of frauds is also unpersuasive. CSX has alleged that the Port made written promises, supported by consideration, to pay any demurrage incurred as a result of its negligence. If true, the application of the statute of frauds is not a bar.

■ Finally, the City argues that any contract it made with the shippers is unenforceable as an unauthorized municipal contract. CSX contends that even if the contract was not authorized, the Port is estopped to deny its validity. In Florida, it appears that a city can be estopped from denying liability for a contractual obligation when it was acting in a proprietary capacity. *Killearn Properties, Inc. v. City of Tallahassee,* 366 So.2d 172, 178 (Fla. 1st DCA 1979), *cert. denied,* 378 So.2d 343 (Fla.1979). Here, the Port's actions and statements regarding the demurrage were in a proprietary capacity.

Therefore, viewing the allegations in a light most favorable to the plaintiff, its motion to file an amended and supplemental complaint is GRANTED, and it shall be filed this date. However, defendants need not file their answers or responsive pleadings until further order of this Court. *See infra* at 890.

## B. *Reconsideration*

■ No final judgment has been entered in this case, even though orders granting summary judgment on the three separate claims have been entered. Rule 54(b) provides that "the order or other form of decision is subject to revision at any time before entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." For that reason, Rule 54(b) will govern reconsideration of both of the summary judgment orders.[2] While Rule 54(b) does not provide specific grounds for revision, a court has the inherent power to revise its orders in the interest of justice. *See John Simmons Co. v. Grier Bros. Co.,* 258 U.S. 82, 90–91, 42 S.Ct. 196, 199–200, 66 L.Ed. 475, 479–80 (1922); *Greene v. Union Mut. Life Ins. Co. of America,* 764 F.2d 19, 22 (1st Cir.1985).

As to Count I, CSX argues that the Port's custom and practice of paying demurrage makes it liable in this instance. While it

---

**2.** The result would remain the same, however, if the motion reconsideration were brought pursuant to Rule 59(e). In order to succeed on a Rule 59(e) motion for reconsideration, the movant must demonstrate: (1) a manifest error of fact or law; (2) newly discovered evidence; or (3) an intervening change in the law. *See, e.g., National Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc.,* 899 F.2d 119, 124 n. 2 (1st Cir. 1990). CSX has failed to meet this burden.

appears that liability for demurrage can arise out from a prevailing custom and practice, CSX has not provided sufficient evidence to create a genuine issue of material fact as to whether custom and practice were within its Count I claim under the published tariff. *See Southern Pac. Transport. Co. v. Matson Navigation Co.,* 383 F.Supp. 154, 156 (N.D.Cal.1974); *Middle Atlantic, supra,* 353 F.Supp. at 1118. Consequently, CSX has failed to establish its entitlement to relief under Rule 54(b), and its motion for reconsideration of my order of June 30, 1995, is DENIED.

Likewise, CSX has not demonstrated any reason justifying relief from my order dismissing Counts II and III of its complaint. In fact, it has merely expanded those allegations contained in the dismissed claims. Accordingly, CSX's motion to reconsider the dismissal of Counts II and III of its complaint is also DENIED. However, to the extent that the claims in Counts II and III may overlap the newly stated claims in the amended complaint, the earlier dismissal is without prejudice.

### C. *Limited Discovery and Scheduling Order*

In order to best facilitate the just, speedy, and inexpensive resolution of this action, written discovery pertaining to plaintiff's demurrage claims arising at the Port of Pensacola between January 1, 1993, and July 31, 1993, is opened for the limited purposes of: (1) "Notice of Constructive Placement" under CSX's demurrage tariff; and (2) "Fault" issues under the Port's published tariff regarding both the Port and the shippers/consignees. This discovery will include interrogatories, requests for admission, and document production, and is to be completed on or before December 31, 1995, at which time all parties must file a joint report as to whether additional discovery is needed. No depositions may be taken during this initial phase of discovery. The combined total of interrogatories and requests for admissions from one party to another party shall not exceed seventy-five (75) in number, including subparts. The limitations of Rule 33(a),

Federal Rules of Civil Procedure, and Local Rule 26.2(C), shall not apply.

All defendants, including those newly added in CSX's amended complaint, need not file an answer or other responsive pleading to the amended complaint until further order of this Court. Additionally, mediation is stayed until December 31, 1995, at which time all parties, including defendants ConAgra Flour Milling Co., ADM Milling Co., Cargill, Inc., and Lauhoff Grain Co. are ordered to return to mediation, as previously directed by the order of June 30, 1995 (doc. 39).

The amended complaint shall be filed this date. Plaintiff shall provide copies of this order to the newly-added defendants promptly after service is effected on them.