**Edward A.H. SIEDLE and the Siedle Directory of Securities Dealers, Inc. Plaintiffs,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., Defendant.**

**No. 8:02–CV–1067–T–24TBM.**

United States District Court, M.D. Florida, Tampa Division.

Oct. 31, 2002.

Order Denying Reconsideration Jan. 8, 2003.

Craig P. Clendinen, John Calhoun Bales, Bales Weinstein, P.A., Tampa, FL, Richard M. Gelb, Daniel C. Hohler, Gelb & Gelb, LLP, Boston, MA, for Edward A.H. Siedle, Siedle Directory of Securities Dealers, Inc.

Mark A. Brown, Marty J. Solomon, Carlton Fields, P.A., Tampa, FL, Carla B. Oakley, Brobeck, Phleger & Harrison, San Francisco, CA, for National Association of Securities Dealers, Inc.

### ORDER

BUCKLEW, District Judge.

This cause comes before the Court for consideration of Defendant's Motion to Dismiss (Doc. No. 9, filed July 15, 2002).

Plaintiffs filed an Opposition thereto (Doc. No. 10, filed July 25, 2002). This Court also considers Plaintiffs' Motion for Leave to Amend the Amended Complaint (Doc. No. 25, filed October 3, 2002). Defendant filed an Opposition thereto (Doc. No. 27, filed October 15, 2002). This Court held oral argument on the motions on October 22, 2002.

### I. Background

This case was brought by Plaintiff Edward A. Siedle, a former Securities and Exchange Commission attorney and a former associate counsel and director of compliance for a "major money management company." Plaintiff Siedle further states that he is president of Benchmark Financial Services, Inc., which is a broker-dealer registered with the National Association of Securities Dealers, Inc., and that he published *The Siedle Directory Securities Dealers ("The Siedle Directory")* up until May 30, 2002.

In the Amended Complaint, Plaintiff Siedle added his company, The Siedle Directory of Securities Dealers, Inc. ("Siedle Company") as a plaintiff. Plaintiffs allege that Plaintiff Siedle assigned his copyright to the Siedle Company and that the Siedle Company now publishes *The Siedle Directory*.

*The Siedle Directory* contains material copied from the Central Registration Depository ("CRD"). Plaintiffs allege that the NASD and/or its affiliates maintain and include the CRD as part of the NASD's Public Disclosure Program ("PDP"), which is made available through a web site operated by NASD and/or its affiliates (the "PDP web site"). Plaintiffs further allege that NASD and others administer the CRD under the oversight of the United States Securities and Exchange Commission and that the PDP was created

pursuant to the statutory mandate of 15 U.S.C. § 78o–3(i).

Plaintiffs plead that the PDP web site includes a "click agreement" to which users must agree in order to request and obtain CRD information. Plaintiffs attach a copy of the "original click agreement" as Exhibit B to the Amended Complaint (the "First Click Agreement"). The First Click Agreement addresses restrictions on the commercial use of the contents of the PDP web site.

In December 2001, Plaintiff Siedle hired a computer programmer to create a program so that he could download the content found on the PDP web site in its entirety, and, in February 2002, the programmer copied content from the PDP web site for the purpose of Plaintiffs' reproduction and commercialization of that content in *The Siedle Directory*. Plaintiffs sell hard copies of *The Siedle Directory* for approximately $850 per copy.

Plaintiffs allege that NASD revised its click agreement on or about March 12, 2002 and a copy of this agreement (the "Second Click Agreement") is attached to the Amended Complaint as Exhibit C. The Second Click Agreement also addresses restrictions on the commercial use of the contents of the PDP web site.

Plaintiffs seek a declaration that they are entitled under the First Click Agreement to publish and sell *The Siedle Directory*, which admittedly contains content copied from the PDP web site without interference from NASD. Count I, Amended Complaint. Plaintiffs likewise seek a declaration that they are entitled to copy and republish the PDP web site content for commercial resale under the Second Click Agreement. Count II, Amended Complaint. In Counts III and IV, Plaintiffs seek orders from this Court temporarily and permanently enjoining NASD from interfering with their continued copying of PDP web site content, their repro-duction of that content is *The Siedle Directory*, and their commercial sale of *The Siedle Directory*.

Defendant now moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., arguing that each of Plaintiffs' claims fails as a matter of law because Plaintiffs have agreed and must agree to comply with the First and Second Click Agreements, which prohibit the copying and republication of the PDP web site content for commercial sale. Plaintiffs contend that click agreements should be held unenforceable and, if held enforceable, the First Click Agreement on its face does not limit the Plaintiffs' access and use of the PDP information. Plaintiffs also argue that even if the First Click Agreement and the Second Click Agreement could be construed as valid, they are unenforceable because they are against public policy and violate the NASD's federal mandate.

The Plaintiffs move this Court for leave to amend the Amended Complaint to add a count based upon a written request for information from NASD using a form downloaded from the web site, which information the NASD declined to provide. Defendant opposes the motion arguing that the amendment would be futile as the new claim is fatally defective.

## II. *Motion to Dismiss*

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bank v. Pitt*, 928 F.2d 1108, 1111–12 (11th Cir. 1991) (citing *Conley v. Gibson*, 355 U.S. 41,

45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). The Federal Rules of Civil Procedure have adopted this "simplified pleading" approach because of "the liberal opportunity for discovery and other pretrial procedures ... to disclose more precisely the basis of both claim and defense ...." *Conley*, 355 U.S. at 48, 78 S.Ct. 99. The purpose of notice pleading is to reach a decision on the merits and to avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." *Id.*

It is well established that, where a cause of action stems from a contract that is attached to the complaint as an exhibit, the contract is considered part of the record for a Rule 12(b)(6) motion to dismiss. If the contract demonstrates unambiguously that the plaintiff's relief is not merited, the claims should be dismissed. *Jacksonville Newspaper Printing Pressmen & Assistants' Union No. 57 v. Florida Pub'g Co.*, 340 F.Supp. 993, 995 (M.D.Fla.)(granting defendant's motion to dismiss "where plaintiff's cause of action arises out of· a contract which is attached to his complaint as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited"), *aff'd*, 468 F.2d 824 (5th Cir.1972), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973); *Breckenridge Creste Apartments, Ltd. v. Citicorp Mortg., Inc.*, 826 F.Supp. 460, 464 (N.D.Ga.1993)(granting defendant's motion to dismiss "when the contract is attached to the complaint as an exhibit, dismissal is appropriate if the court finds that no possible relief can be granted under any construction of the contract sued upon"), *aff'd*, 21 F.3d 1126 (11th Cir.1994).

■ This Court must first address the Plaintiffs' argument that the validity of click agreements is a matter of first impression in Florida and that they should not be enforced in this case. This Court is unpersuaded by Plaintiffs' argument against the validity of click agreements. There are any number of cases from other state and federal courts expressly and implicitly approving the validity of click agreements. *See, e.g., Moore v. Microsoft Corp.*, 293 A.D.2d 587, 741 N.Y.S.2d 91 (2002); *Caspi v. Microsoft Network, L.L.C.*, 323 N.J.Super. 118, 732 A.2d 528 (App.Div.), *cert. denied*, 162 N.J. 199, 743 A.2d 851 (1999); *Hotmail Corp. v. Van$ Money Pie Inc.*, 47 U.S.P.Q.2d 1020, 1025, 1998 WL 388389 (N.D.Cal.1998); *I.Lan Sys., Inc. v. Netscout Serv. Level Corp.*, 183 F.Supp.2d 328, 338 (D.Mass. 2002); *Register.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238, 245–48 (S.D.N.Y.2000); *Management Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So.2d 627 (Fla. 1st DCA 1999). In addition, although there may be no Florida case law directly on point, the Plaintiffs were unable to cite the Court to any case law, Florida or otherwise, holding a click agreement unenforceable or invalid. Accordingly, this Court finds no reason to hold that the click agreements in this case are unenforceable or invalid.

Having found the click agreements enforceable, this Court next addresses Defendant's argument that Count I fails to state a claim because the First Click Agreement expressly prohibits commercial exploitation of content downloaded from

the PDP web site. Plaintiffs, on the other hand, argue that the language of the First Click Agreement clearly allows their commercial use under subparagraph (a).

The First Click Agreement provides, in relevant part, that:

1. Information provided through the Public Disclosure Program shall be used ONLY:

   a. to assist in determining whether to conduct or continue to conduct securities or commodities business with NASD Member Firms or Associated Persons;

   b. in judicial proceedings or arbitration proceedings relating to securities or commodities transactions; or

   c. for other non-commercial purposes consistent with the promotion of just and equitable principles of trade and the protection of investors and the public interest.

Plaintiffs contend that subparagraph (c) of paragraph 1 does not modify subparagraphs (a) and (b) of paragraph 1 because of the use of the disjunctive "or" and that, therefore, commercial use of the content is permitted so long as the use is for purposes identified in subparagraphs (a) and (b).

■ It is well settled that contract interpretation is a question of law. Questions of fact arise only when an ambiguity in a contract forces the court to examine extrinsic evidence of the parties' intent. *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir.1995). Under the ordinary rules of contract construction, a court first examines the "natural and plain meaning" of the contract, and "ambiguity does not exist simply because a contract requires interpretation or fails to define a term...." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir.1996). In

this case, the terms of the First Click Agreement are clear and unambiguous.

■ To adopt the Plaintiffs' reading of the contract, the word "other" in subparagraph (c) would be completely superfluous. The word "other" must be read to refer to the prohibition on commercial use even for purposes identified in subparagraphs (a) and (b). The law compels that a contract should not be interpreted in a manner that would render a word, or term, extraneous. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 117 F.3d 1328, 1338 (11th Cir. 1997)("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable."); *see also Restatement (Second) of Contracts*, § 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

■ Individual terms must not be considered in isolation when interpreting a contract, but rather must be interpreted as a whole and in relation to one another. *Jerry's, Inc. v. City of Miami*, 591 So.2d 1000, 1001 (Fla. 3d DCA 1991). Accordingly, the word "or" is properly read as connecting a series of non-commercial uses; not demarcating between commercial use and non-commercial use, as argued by the Plaintiffs.

■ The terms of paragraph 1 of the First Click Agreement soundly support the conclusion that the First Click Agreement prohibits Plaintiffs' copying of the PDP web site content and from republishing that content for their own commercial purposes. Taken as a whole, the agreement clearly permits access to and use of the PDP web site content solely for an individual's or his advisor's use in deciding with

whom to conduct securities or commodities business, for use in legal proceedings, or otherwise for the protection of investors and not for commercial purposes. As a result, Count I and the related claims for injunctive relief fail as a matter of law. Moreover, because Plaintiffs can allege no facts to cure the defects in these claims, the dismissal is without leave to amend.

■ Plaintiffs do not argue that the Second Click Agreement can be interpreted to allow commercial use of the PDP web site content, but alternatively argue that if the First and Second Click Agreements are construed as valid, they are still unenforceable because they are against the policy of public disclosure and violate NASD's federal mandate. This argument rings hollow as Plaintiffs fail to cite to any authority in support of their argument. Indeed, the federal statute which requires the NASD to provide requested PDP information through its web site or otherwise does not address commercial use of the information.

Pursuant to the SEC's mandate delegated to NASD under 15 U.S.C. § 78o–3(i), NASD must:

> (1) establish and maintain a toll-free telephone listing to receive inquiries regarding disciplinary actions involving its members and their associated persons, and (2) promptly respond to such inquiries in writing. Such association may charge persons, other than individual investors, reasonable fees for written responses to such inquiries. Such an association shall not have any liability to any person for any actions taken or omitted in good faith under this paragraph.

The prohibitions in the First and Second Click Agreements against commercial use of the PDP web site content are not inconsistent with the goal of making information public and aiding investors. The PDP web site is available to individual investors and their advisors to provide them with the information to be used in selecting an NASD member firm or associated person, for use in judicial proceedings, or for other non-commercial purposes to protect investors.

Plaintiffs' argument that NASD's ability under the statute to charge a reasonable fee to persons other than individual investors anticipates that such persons are entitled to such data for any purpose including commercial is conclusory and without merit. Accordingly, Count II and the related claims for injunctive relief are dismissed without leave to amend.

Plaintiffs argue that they should be permitted discovery prior to a ruling on the motion to dismiss concerning, among other things, communications between NASD and the SEC and other regulatory agencies regarding the CRD and the PDP web site, the policies underlying the click agreements, the drafting and interpretation of the click agreements, the furnishing of information through the PDP, and under what circumstances NASD does and does not attempt to enforce its agreements or makes accommodations to persons other than the Plaintiffs. All of these issues, however, go to the intent of the parties. The intent of the parties is only relevant if the Court finds the language of the contract ambiguous. Because the Court has found the language of the click agreements unambiguous, the Court finds the additional requested discovery unnecessary to the issues before it.

### III. *Motion for Leave to Amend*

■ Plaintiffs seek to amend their Amended Complaint to add a claim for declaratory judgment based on a request for information from NASD in writing using a NASD form downloaded from its website, which information NASD ultimately did not provide. A decision whether to grant or deny a motion for leave to

file an amended complaint is within the sound discretion of the district court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Under Rule 15(a), Fed.R.Civ.P., leave to amend "shall be freely given when justice so requires." Accordingly, there must be a "justifying reason" for a court to deny leave to amend. *Id.* at 182, 83 S.Ct. 227. Futility of the amendment is one such justifying reason. *CSX Transp., Inc. v. City of Pensacola,* 936 F.Supp. 885, 887 (N.D.Fla.1995). The Court finds that Plaintiffs' proposed amendment is futile and fails for the same reasons as discussed above. Specifically, the form itself does not obligate the NASD to provide its PDP web site content for commercial use. The form request likewise violates the Terms and Conditions applicable to NASD's PDP web site. Accordingly, the Plaintiffs' Motion for Leave to Amend the Amended Complaint must be denied.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendant's Motion to Dismiss (Doc. No. 9) is **GRANTED.**

(2) Plaintiffs' Motion for Leave to Amend the Amended Complaint (Doc. No. 25) is **DENIED.**

(3) The Clerk is directed to **CLOSE** this case.

### *ORDER*

This cause comes before the Court for consideration of Plaintiffs' Motion for Reconsideration (Doc. No. 32). Defendant filed an Opposition thereto (Doc. No. 33).

There are three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Sussman v. Salem, Saxon & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D.Fla.1994). Plaintiffs' motion does not fit within any of these three grounds.

Having considered the motion, and being otherwise fully advised, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Reconsideration (Doc. No. 32) is **DENIED.**